## ESSEX PUBLIC ROAD BOARD *v.* SKINKLE.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW JERSEY

No. 262. Submitted March 25, 1891. — Decided May 11, 1891.

An executive agency, created by a statute of a State for the purpose of improving public highways, and empowered to assess the cost of its improvements upon adjoining lands, and to put up for sale and buy in for a term of years for its own use any such lands delinquent in the payment of the assessment, does not, by such a purchase, acquire a con-

tract right in the land so bought which the State cannot modify without violating the provisions of the Constitution of the United States.

Such a transaction is matter of law and not of contract, and as such is not open to constitutional objections.

Even as to third parties an assessment is not a contract in the sense in which the word is used in the Constitution of the United States.

THE case is thus stated in the opinion of the Court of Errors and Appeals of New Jersey, delivered by Mr. Justice Parker, and reported in 49 N. J. Law, (20 Vroom) 641, 664:

"'The Essex Public Road Board' was created by an act of the legislature, approved March 31st, 1869.   The object of the act was to create a body charged with the duty of constructing and maintaining a better class of public carriage roads in the county of Essex.

"The fifth section of the act provides for the assessment of damages sustained by owners of lands taken for roads, and also for assessment upon other lands benefited by such roads.

"The fifteenth section provides that the assessments laid for benefits shall be and remain liens upon the lands benefited until paid; and where the assessments are not paid, authority is given to the board to sell such lands at public sale to any person who will take it for the shortest period of time, not exceeding fifty years, and pay the full amount due on the assessment.

"The section last named also enacts that the road board shall give to the purchaser of the lands a certificate of sale, describing the premises so sold, and the length of time for which they were purchased; and also contains the further provision that if at the end of three years from the day of sale the lands shall not have been redeemed, the board, upon surrender of said certificate, shall execute and deliver to the purchaser a declaration of sale of said lands, with the provision that the time for redeeming the same shall remain open (notwithstanding the term of three years may have expired) until the term for which the purchaser agreed to take the same shall be ended.

"By a supplement, approved March 31st, 1875, it was provided that such lands as were not bid off, when offered at the

original sale, or at a resale, when the first purchaser failed to comply, should be struck off to the road board by its corporate name, for the term of fifty years, and that it might be held and sold or assigned and disposed of by said board for the use of the county, with all the rights and privileges of a purchaser at such sale, and subject to the same conditions and limitations.

"On the 31st day of March, 1882, an act was passed which gives power to compound, adjust and compromise any tax or assessment which may have been laid, or might thereafter be laid by virtue of the powers conferred by the acts concerning the road board, between the board and the owner or mortgagee of any land which may have been or thereafter might be taxed or assessed for benefits, and to discharge the land from the lien of such tax or assessment, upon payment of the sum agreed upon.

"The said last-mentioned act also provides that in case of an application by any owner or mortgagee for an adjustment, with the road board, of any tax or assessment laid, and their failure to agree, or in case of neglect or refusal of the board to act upon the application, the owner or mortgagee who made the application to the board for adjustment may petition the justice of the Supreme Court who holds the circuit court of the county where the land lies, for the appointment of arbitrators to settle and adjust the matter in difference between the petitioner and the board.

"The third section of the act last mentioned provides that the said justice of the Supreme Court, if in his discretion he deems it a proper case for arbitration, shall appoint arbitrators, who, after notice and hearing, shall fix and adjust a specific sum to be paid by the owner or mortgagee so petitioning, in full settlement and discharge of the tax or assessment; provided, that said act shall not apply to cases where the land had been sold for taxes or assessments and bought by a *bona fide* purchaser, other than the board or its representative.

"The said act also requires that the arbitrators shall report in writing to said justice of the Supreme Court, who will order it filed with the clerk of the county, and that upon service of

a certified copy of such report on the road board, with the tender of the amount named therein, together with interest, to the board, it shall, by its proper officers, receipt the tax or assessment against such land in full and give a release and acquittance of the same from the lien of any such tax or assessment, and that the said land shall, by operation thereof, be freed, released and discharged from the lien and incumbrance thereof.

"Under the act of 1882, Jacob Skinkle, the defendant in error, presented a petition to the justice of the Supreme Court who holds the circuit court of Essex County, asking for the appointment of arbitrators to settle and adjust the matter in difference between him and the Essex Public Road Board, in reference to certain assessments for benefits, which had been imposed on certain lands of his, under the act incorporating the Essex County Road Board and supplements thereto.

"It appears by the petition that the title to the lands on which the assessments for benefits had been laid, at the time they were laid, and at the time the improvements were made, stood in the name of Caleb B. Headley, and that the said Jacob Skinkle held a mortgage thereon; and that subsequently (but before the filing of the petition) said Skinkle became the owner thereof by purchase, under foreclosure proceedings on his mortgage.

"The petition of Skinkle states that he had applied in writing to the road board for an agreement and compromise of the assessments on said land, laid for benefits, and that said board had declined to entertain the same.

"After presentation of the petition, duly verified, to the justice, and after testimony had been taken, the said justice certified to the Supreme Court for its advisory opinion, a number of questions of law, which had been raised before him, on the motion to appoint arbitrators. The Supreme Court heard argument upon the questions which had been certified, and returned to said justice its advisory opinion, in which the legal position of the petitioner on all the questions certified was sustained. Whereupon the justice proceeded under the petition and appointed arbitrators to settle and adjust the matter, and

to hear parties and their witnesses, and to fix the sum to be paid by the petitioner in full settlement and discharge of said assessments laid by the Essex Public Road Board upon said land.

"The arbitrators reported that they fixed and adjusted a specific sum (naming the amount) to be paid by said Skinkle to the road board, in full settlement and discharge of the assessments which had been made on said land, in order to make said assessment conform in amount to the benefits conferred upon said property by the improvements. Upon coming in of the report the justice ordered it filed. Then the road board, by writ of *certiorari*, brought all the proceedings to the Supreme Court, where it was decided that there was no error.

"The writ of error to this court, therefore, brings before us all the questions which were raised before the justice and by him certified as aforesaid, as well as the legality of the action of the arbitrators in fixing the amount to be paid by the petitioner in discharge of the assessments on the lands."

The opinions of the Supreme Court are to be found in 47 N. J. Law (18 Vroom) 93, and 49 N. J. Law (20 Vroom) 65.

The Court of Errors and Appeals held that the act entitled "An act to authorize the compromising or settling by arbitration of any tax or assessment laid by any public road board in this State," approved March 31, 1882, was constitutional; that it was retrospective in its character; that either the owner of the land or the mortgagee might apply; that a case was made which justified the justice in appointing abitrators; that the proceedings and report of the arbitrators were legal; and that there was no difficulty in carrying out the provisions of the act. The judgment of the Supreme Court of New Jersey was affirmed, and the record remitted to that court, and the cause brought here on writ of error.

*Mr. J. W. Taylor* for plaintiff in error. *Mr. Joseph A. Beecher* was with him on the brief.

*Mr. J. Frank Fort* for defendant in error.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

Was the obligation of a contract impaired, or plaintiff deprived of property without due process of law, by the act of March 31, 1882?

The argument is that, because the real estate assessed might, in the absence of purchasers at the sale to enforce the assessment, be struck off to the board for the term of fifty years, under the 5th section of the act of 1875, (Laws of N. J. 1875, 420,) and might "be held and sold, assigned and disposed of by said board, for the use of the county, with all the rights and privileges of a purchaser at such sale," the board, whenever this happened, became vested with a term in the real estate so struck off to it by the same title, and subject to the same protection, which any other *bona fide* purchaser at such sale would have acquired under section 15 of the act of 1869. Laws of N. J. 1869, 957. And that, therefore, the act of 1882, (Laws of N. J. 1882, 256,) in providing a mode by which the assessment might be compounded, compromised and discharged, and that this might be done where the real estate had not been sold to a *bona fide* purchaser other than the public road board or its representative, impaired and annulled an executed contract, and took for the defendant's private use property vested in the board.

We do not concur in this view. The public road board was an involuntary *quasi* corporation, created to construct a public work and authorized to procure the means to accomplish the improvement by the imposition of assessments upon private property. It was purely a governmental agency, existing wholly for public purposes, and whose interests belonged exclusively to the public. The power of the legislature over it was plenary. It held, and could hold, no real estate in a proprietary or private sense, and after it was empowered to bid in at its own sale, it acquired no more proprietary interest in the real estate struck off to it, than it had had in the assessment. Its purchase was in perpetuation of the lien and in aid of collection, and it was as competent for the legislature,

as between it and its own agent, to prescribe terms upon which the land owner might redeem, as to abolish the board and rescind the assessment altogether; as it might do, saving any vested rights of third parties.

The entire transaction was matter of law and not of contract, and as such, open to no constitutional objection. *Commissioners* v. *Lucas*, 93 U. S. 108 ; *Newton* v. *Commissioners*, 100 U. S. 548 ; *Maryland* v. *Balt. & Ohio Railroad Co.*, 3 How. 534.

Even as to third parties an assessment is not a contract in the sense in which the word is used in the Constitution of the United States; and whether rights arising thereon have become vested depends upon circumstances. *Garrison* v. *New York*, 21 Wall. 196 ; *Balt. & Susquehanna Railroad* v. *Nesbit*, 10 How. 395.

In *Garrison* v. *New York*, this court decided that the New York act of 1871, authorizing the Supreme Court of the State to vacate an order made in 1870, confirming the report of the commissioners respecting property taken for a public improvement, if error, mistake, irregularity or illegality appeared in the proceedings, or the assessments for benefits or the awards for damage had been unfair and unjust, or inequitable or oppressive, and to refer the matter back to new commissioners to amend or correct the report, or to make a new assessment, was not unconstitutional.

Mr. Justice Field, delivering the opinion of the court, said : " In the proceeding to condemn the property of the plaintiff for a public street, there was nothing in the nature of a contract between him and the city. The State, in virtue of her righ of eminent domain, had authorized the city to take his property for a public purpose, upon making to him just compensation. All that the constitution or justice required was that a just compensation should be made to him, and his property would then be taken whether or not he assented to the measure. The proceeding to ascertain the benefits or losses which will accrue to the owner of property when taken for public use, and thus the compensation to be made to him, is in the nature of an inquest on the part of the State, and is

necessarily under her control. It is her duty to see that the estimates made are just, not merely to the individual whose property is taken, but to the public which is to pay for it. And she can to that end vacate or authorize the vacation of any inquest taken by her direction, to ascertain particular facts for her guidance, where the proceeding has been irregularly or fraudulently conducted, or in which error has intervened, and order a new inquest, provided such methods of procedure be observed as will secure a fair hearing from the parties interested in the property. . . . Until the property is actually taken, and the compensation is made or provided, the power of the State over the matter has not ended. Any declaration in the statute that the title will vest at a particular time, must be construed in subordination to the constitution, which requires, except in cases of emergency admitting of no delay, the payment of the compensation, or provision for its payment, to precede the taking, or at least to be concurrent with it."

In *Balt. & Susquehanna Railroad* v. *Nesbit*, the State of Maryland granted a charter to a railroad company, in which provision was made for the condemnation of land by the assessment of damages by a jury and the confirmation of the award by the county court. The charter further provided that the payment or tender of payment of such valuation should entitle the company to the property as fully as if it had been conveyed. In 1836 there was an inquisition by a jury condemning certain lands, which was ratified and confirmed by the county court. In 1841 the legislature passed an act directing the court to set aside the inquisition and order a new one. On the 18th of April, 1844, the railroad company tendered the amount of the damages, with interest, to the owner of the land, which offer was refused, and on the 26th of April, 1844, the owner applied to the county court to set aside the inquisition and make a new one, which the court directed to be done. It was held that the law of 1841 was not a law impairing the obligation of a contract; and that it neither changed the contract between the company and the State, nor did it divest the company of a vested title to the land.

Undoubtedly the distinction exists, as counsel urges, between regulation and appropriation, and under the Constitution of New Jersey, as under those of the other States, the legislative power is not so transcendent that it may at its will do that which amounts to an arbitrary divestiture of the private property of a municipal corporation.

In *Railroad Co.* v. *Ellerman,* 105 U. S. 166, 172, which involved the right of the city of New Orleans to erect and maintain wharves within its limits and to collect wharfage under its charter and the statutes of Louisiana, it was held that no right of the city was infringed by a subsequent enactment of the general assembly of that State granting to a railroad company the authority to enclose and occupy for its purposes and uses a specifically described portion of the levee and batture and maintain the wharf it had theretofore erected upon its property within those limits, and exempting it from the supervision and control which the municipal authorities exercised in a matter of public wharves. And Mr. Justice Matthews, delivering the opinion of the court, said: "Neither would this be in derogation of any vested right of the city. Whatever power the municipal body rightfully enjoys over the subject is derived from the legislature. They are merely administrative and may be revoked at any time, not touching, of course, any property of the city actually acquired in the course of administration."

But no question involving that distinction arises here. There is no contract with or grant to the public road board, which the State could not resume; and in no aspect can the board be regarded as acting in a private capacity, or as having acquired a private interest in real estate struck off to it for want of purchasers.

We may properly consider the case in another aspect, equally decisive. The road board act prescribed that assessments should be made in proportion to, and not in excess of, the benefits conferred by the improvement; and by the law under consideration the road board was enabled to compound, adjust and compromise any tax or taxes, assessment or assessments, that might have been, or might thereafter be, laid or imposed

by virtue of the road board acts, and in case of application by the owner or mortgagee for a compromise and adjustment, and on the failure of agreement between the board and the applicant, the applicant could apply on notice for the appointment of arbitrators; and the statute provided for a hearing of all the parties in interest, and for a full review of the proceedings through the judicial tribunals of the State. The record clearly shows that the legislature intended by the act of 1882 to correct the results of previous action, which had been so mistaken and oppressive as to call for interference.

In *Commissioners* v. *Lucas*, 93 U. S. 108, it was ruled that unless restrained by the provisions of its constitution, the legislature of a State possesses the power to direct a restitution to taxpayers of a county, or other municipal corporation, of property exacted from them by taxation, into whatever form the property may be changed, so long as it remains in the possession of the municipality, and that the exercise of this power infringed upon no provision of the Federal Constitution.

The Supreme Court of New Jersey was manifestly right in holding that the object of the law was to give an appeal to the land owner, where the judgment against him would otherwise be final, and to so far review previous action as to secure the result of an assessment made in proportion to, and not in excess of, the benefits conferred by the improvement; and the learned judge who delivered the opinion well said: "Restoration to the injured party, by the judgment of the tribunal established by this law, of the sum taken from him in excess of the benefits conferred, cannot constitute an illegal taking of property from the road board." *Skinkle* v. *Essex Road Board*, 47 N. J. Law, 93, 99.

It is unnecessary to pursue the subject further. We concur with the views expressed by the courts of New Jersey, and the judgment is

*Affirmed.*