CITY OF JERSEY CITY, A MUNICIPAL CORPORATION, ET AL., PROSECUTORS-APPELLEES, v. WILLIAM D. KELLY, STATE TAX COMMISSIONER OF NEW JERSEY, ET AL., RESPONDENTS-APPELLEES, AND LEHIGH VALLEY RAILROAD SYSTEM, ERIE RAILROAD SYSTEM, DELAWARE, LACKAWANNA AND WESTERN RAILROAD SYSTEM, HUDSON AND MANHATTAN RAILROAD SYSTEM, PENNSYLVANIA RAILROAD SYSTEM AND NEW YORK CENTRAL RAILROAD SYSTEM, RESPONDENTS-APPELLANTS.

———

JAMES T. OWENS, PROSECUTOR-APPELLEE, v. WILLIAM D. KELLY, STATE TAX COMMISSIONER OF NEW JERSEY, ET AL., RESPONDENTS-APPELLEES, AND LEHIGH VALLEY RAILROAD SYSTEM, ERIE RAILROAD SYSTEM, DELAWARE, LACKAWANNA AND WESTERN RAILROAD SYSTEM, HUDSON AND MANHATTAN RAILROAD SYSTEM, PENNSYLVANIA RAILROAD SYSTEM AND NEW YORK CENTRAL RAILROAD SYSTEM, RESPONDENTS-APPELLANTS.

———

CITY OF JERSEY CITY, A MUNICIPAL CORPORATION, PROSECUTOR-APPELLEE, v. STATE BOARD OF TAX APPEALS, RESPONDENT-APPELLEE, AND DELAWARE, LACKAWANNA AND WESTERN RAILROAD SYSTEM ET AL., RESPONDENTS-APPELLANTS.

———

CITY OF JERSEY CITY, A MUNICIPAL CORPORATION, PROSECUTOR-APPELLEE, v. STATE BOARD OF TAX APPEALS, RESPONDENT-APPELLEE, AND ERIE RAILROAD SYSTEM ET AL., RESPONDENTS-APPELLANTS.

———

CITY OF JERSEY CITY, A MUNICIPAL CORPORATION, PROSECUTOR-APPELLEE, v. STATE BOARD OF TAX APPEALS, RESPONDENT-APPELLEE, AND HUDSON AND MANHATTAN RAILROAD SYSTEM ET AL., RESPONDENTS-APPELLANTS.

———

CITY OF JERSEY CITY, A MUNICIPAL CORPORATION, PROSECUTOR-APPELLEE, v. STATE BOARD OF TAX APPEALS, RESPONDENT-APPELLEE, AND LEHIGH VALLEY RAILROAD SYSTEM ET AL., RESPONDENTS-APPELLANTS.

CITY OF JERSEY CITY, A MUNICIPAL CORPORATION, PROSECUTOR-APPELLEE, v. STATE BOARD OF TAX APPEALS, RESPONDENT-APPELLEE, AND NEW YORK CENTRAL RAILROAD SYSTEM ET AL., RESPONDENTS-APPELLANTS.

CITY OF JERSEY CITY, A MUNICIPAL CORPORATION, PROSECUTOR-APPELLEE, v. STATE BOARD OF TAX APPEALS, RESPONDENT-APPELLEE, AND PENNSYLVANIA RAILROAD SYSTEM ET AL., RESPONDENTS-APPELLANTS.

CITY OF JERSEY CITY, A MUNICIPAL CORPORATION, PROSECUTOR-APPELLANT, PROSECUTOR-APPELLEE, v. STATE BOARD OF TAX APPEALS, RESPONDENT-APPELLEE, AND LEHIGH VALLEY RAILROAD SYSTEM ET AL., RESPONDENTS-APPELLEES, RESPONDENTS-APPELLANTS.

CITY OF JERSEY CITY, A MUNICIPAL CORPORATION, PROSECUTOR-APPELLANT, PROSECUTOR-APPELLEE, v. STATE BOARD OF TAX APPEALS, RESPONDENT-APPELLEE, AND ERIE RAILROAD SYSTEM ET AL., RESPONDENTS-APPELLEES, RESPONDENTS-APPELLANTS.

CITY OF JERSEY CITY, A MUNICIPAL CORPORATION, PROSECUTOR-APPELLANT, PROSECUTOR-APPELLEE, v. STATE BOARD OF TAX APPEALS, RESPONDENT-APPELLEE, AND DELAWARE, LACKAWANNA AND WESTERN RAILROAD SYSTEM ET AL., RESPONDENTS-APPELLEES, RESPONDENTS-APPELLANTS.

CITY OF JERSEY CITY, A MUNICIPAL CORPORATION, PROSECUTOR-APPELLANT, PROSECUTOR-APPELLEE, v. STATE BOARD OF TAX APPEALS, RESPONDENT-APPELLEE, AND HUDSON AND MANHATTAN RAILROAD SYSTEM ET AL., RESPONDENTS-APPELLEES, RESPONDENTS-APPELLANTS.

CITY OF JERSEY CITY, A MUNICIPAL CORPORATION, PROSECUTOR-APPELLANT, PROSECUTOR-APPELLEE, v. STATE BOARD OF TAX APPEALS, RESPONDENT-APPELLEE, AND PENNSYLVANIA RAILROAD SYSTEM ET AL., RESPONDENTS-APPELLEES, RESPONDENTS-APPELLANTS.

CITY OF JERSEY CITY, A MUNICIPAL CORPORATION,
PROSECUTOR-APPELLANT, PROSECUTOR-APPELLEE, v.
STATE BOARD OF TAX APPEALS, RESPONDENT-AP-
PELLEE, AND NEW YORK CENTRAL RAILROAD SYS-
TEM ET AL., RESPONDENTS-APPELLEES, RESPOND-
ENTS-APPELLANTS.

Argued March 5, 1946—Decided May 3, 1946.

For the Cities of Jersey City, Hoboken, Weehawken and West New York and certain taxpayers therein, *Charles A. Rooney, John J. Fallon, John N. Platoff* and *Samuel Hirschberg* (*Charles Hershenstein* and *Milton B. Conford,* of counsel).

For the Delaware, Lackawanna and Western Railroad Company, Erie Railroad Company, Lehigh Valley Railroad Company and New York Central Railroad Company and their respective systems, *Collins & Corbin* (*Edward A. Markley,* of counsel), and *Maximilian M. Stallman.*

For the Pennsylvania Railroad Company and the companies comprising the Pennsylvania Railroad System and the Pennsylvania, Reading Seashore Lines, *Wall, Haight, Carey & Hartpence* (*John A. Hartpence,* of counsel).

For the Hudson and Manhattan Railroad Company and the companies comprising the Hudson and Manhattan Railroad System, *Carpenter, Gilmour & Dwyer* (*Carl S. Kuebler,* of counsel).

For the State of New Jersey, *Walter D. Van Riper,* Attorney-General (*Benjamin C. Van Tine,* Deputy Attorney-General, of counsel).

The opinion of the court was delivered by

OLIPHANT, J. These are appeals from three rules for judgment entered in the Supreme Court in railroad tax cases. We are in entire accord with the opinion of Mr. Justice Perskie speaking for that court, 133 *N. J. L.* 202, except as

it declares chapter 291, *Pamph. L.* 1941, as amended by chapter 169, *Pamph. L.* 1942, unconstitutional as applied to the taxes due from the railroad companies to the state for the tax year 1941. It is a fundamental rule, applied with unvarying uniformity, that legislative enactments will be declared void only in cases where they are in conflict with the constitution. If the constitutionality of the statute is in anywise doubtful such shall not be declared void. *Attorney-General* v. *McGuiness,* 78 *N. J. L.* 346, 347; *Moore* v. *State,* 43 *Id.* 203, 244; *Wilentz* v. *Hendrickson,* 135 *N. J. Eq.* 244, 251; *Buttfield* v. *Stranahan,* 192 *U. S.* 470, 492.

The reasons upon which the Supreme Court opinion is based are that (a) "The State admittedly had a vested right to the taxes as first computed" under *R. S.* 54:27–4; (b) the tax as so "first computed" amounted to $18,322,164.33; (c) under the final computation made under the 1941 act, as amended in 1942, the total tax amounted to $15,042,913.07; (d) thus, there was a net face difference between the original computation for 1941 under the old law and the final computation of the tax under the 1941 law, amounting to $3,279,233.26; (e) therefore as to the tax year 1941, the 1941 Railroad Tax Act violated article 1, paragraph 20 of the state constitution, which provides "no donation of land or appropriation of money shall be made by the State or any municipal corporation to or for the use of any society, association or corporation whatever."

The old railroad tax law provided "The amount of tax payable * * * shall be due and payable * * * on any day between said June 1st and December 1st following * * * (*R. S.* 54:27–2);" and, further, "* * * these taxes shall be a lien paramount to all other liens upon all the lands and tangible property and franchises of the company in this State. The liens shall take effect on June 1st of the year in which the tax is payable and shall be a debt due from the company to the State on that date, for which an action at law or suit in equity may be maintained, and shall be a preferred debt in case of insolvency." (*R. S.* 54:27–4.) By *R. S.* 54:26–7 appeal from such tax to the State Board of Tax Appeals is

provided for if made on or before the third Monday of June following the levying or imposition of the tax, namely, June 1st. *R. S.* 54:26–9 provides "If it shall be made to appear upon such hearing that any such assessment or tax is illegal, excessive, insufficient, or that there has been illegal discrimination in the assessment, the Board shall correct, adjust and equalize the assessment and tax of such property." The final determination of the State Board of Tax Appeals is subject to *certiorari* (*R. S.* 54:26–11), and the judgment of the Supreme Court on *certiorari* may be further appealed to the Court of Errors and Appeals.

Under these statutory provisions, the assessments and the amount of tax as certified by the Commissioner on or before the 1st day of June following his completion of valuations are subject to revision. They become definite, final and irrevocable on the third Monday of June following provided no appeal is taken therefrom to the State Board of Tax Appeals. If such appeal is taken to that Board, and there was in the instant case, the assessments and the amount of tax remain subject to revision until all right for future review is exhausted or lost by time limitation.

The decision of the Supreme Court, as heretofore stated, is predicated upon the assumption that the state had a vested right in the taxes as first computed. The vice of this premise, which led the court to an erroneous conclusion, is not in what it says but in what it fails to state, for while the state had a vested right in the taxes such right was subject to divestment in either of two ways: (1) By further action of the 1941 legislature, provided such action was within constitutional limitations, or (2) in the event of a successful appeal by the railroad companies under the procedure prescribed by *R. S.* 54:19–1, *et seq.,* the old Railroad Tax Act. In the latter instance if the taxes were reduced from the original assessment the right of the state would be divested to the extent of the reduction. The word "vested" when used as descriptive of recognized legal rights, does not exclude divestible rights or interests. It is used to denote the quality of a present right or interest, even though divestible, as distinguished from that

the very existence of which is contingent. *Class* v. *Strack,* 85 *N. J. Eq.* 319, 322.

The question confronting us deals with the first manner of divestment above enumerated and is: does chapter 291, laws of 1941, violate article 1, paragraph 20 of the state constitution?

Appeals from the assessments of the Tax Commissioner had been taken by all interested parties and those appeals are still to be heard by the State Board of Tax Appeals under the Supreme Court's holding in this very case. At the time of the questioned enactment there was no finality of the amount claimed to be due by the state. If there had been no appeals the amount as assessed would have become fully determined and the right of the state not subject to divestment after the third Monday in June.

We are not dealing here with rights created and existing between private persons. We are concerned with the sovereign power to tax and to provide for a method of securing the payment of such tax. There can be no doubt that the 1941 taxes became a lien paramount to all other liens on June 1st, 1941, for the amount of tax as finally determined but this does not mean that the state acquired an irrevocable right in the full amount of the original assessment on such date, otherwise the reduction thereof by the State Board of Tax Appeals or by the courts, if such should be the case, would be unlawful.

The Supreme Court is fundamentally wrong in assuming that the lien granted as of June 1st by *R. S.* 54 :27–4 is for a definite amount of taxes, because the lien given by such section is a lien for whatever tax is finally determined upon, whether it be the same or whether it be higher or lower than the amount originally certified as of June 1st. If the Supreme Court's theory of lien for the amount of taxes certified on June 1st is correct then if such amount was eighteen million dollars and under appeal it was raised to twenty-five million dollars the holding would have to be that the lien of the state existed only for eighteen million dollars and that it had no lien for the seven million dollars increase in taxes pursuant to the final determination of the appellate authorities. The con-

tradiction into which the Supreme Court opinion might lead this court, if it were to affirm *in tolo,* is that under that opinion the State Board of Tax Appeals must hear and determine the present appeals pending addressed to the assessments certified as of June 1st, 1941, under the old law and it is within the power of the State Board of Tax Appeals to affirm the assessments as made, to increase or lower them. It is entirely possible that the State Board, or the courts, by reducing the assessments, may lower the tax certified as of June 1st, 1941, amounting to $18,322,164.33, so that the total tax payable to the state and for which the state would have a lien would be lower than fifteen million dollars. We would then have this court in the incongruous position of holding that the 1941 Tax Law, under which railroads would pay $15,042,913.07, is unconstitutional because it gives away moneys of the state to the railroads in contravention of the constitution, when the fact will be that it brings into the state treasury more money than the state would receive under the old Railroad Tax Law after the final determination of the exact amount due, for which the state has a lien. Further under the opinion of the Supreme Court if a tax law contained a manifest error the legislature would be powerless to correct it after June 1st or to legislate at all with respect to current taxes after that date.

The claim is made that the 1941 statute is unconstitutional because the railroads *in the aggregate* will pay over three million dollars less in taxes than under the prior act. Aggregate payments by all the roads do not constitute a proper basis upon which to determine the question before us. Under the act some railroad companies will pay more, others less than under the old act, at least for 1941 taxes, but it cannot be successfully asserted that the act is constitutional as to some roads, unconstitutional as to others. Could it be that if the method of taxation under the new act brought in taxes to the state in the aggregate a sum ten dollars less than under the old act the 1941 statute would be unconstitutional? It must be remembered that we are not dealing here with a statute which cancels back taxes which have accrued and

become fixed and determined but with a basic change in the tax law with respect to the rate of taxation enacted before the tax for the current year was due and payable and at a time when it was being disputed and the amount thereof being litigated by all parties interested. The right to repeal tax laws at any stage of the proceedings for their enforcement has the fullest recognition. *Belvidere* v. *Warren Railroad Co.*, 34 *N. J. L.* 193. This principle was reiterated in *Skinkle* v. *Essex Road Board*, 47 *Id.* 93; *affirmed*, 49 *Id.* 65 and 641, and 140 *U. S.* 334, where it was said: "There is no restraint upon the power of legislation to control and modify the method of taxation and its collection, or to reduce and altogether extinguish an assessment laid, provided the law is uniform and general in its application, and in its operation co-extensive with the limits of the political bodies to which it relates."

The decisions in this court in the case of *In re Voorhees*, 123 *N. J. Eq.* 142; *affirmed*, 121 *N. J. L.* 594; 124 *Id.* 35, and that of *Wilentz* v. *Hendrickson, supra,* and on which prosecutors rely, are not authorities contrary to the opinions herein expressed. In the former a transfer inheritance tax was involved. The amount of the tax, which the statute under review sought to fully exempt, had already become fixed and was due and payable before the enactment of the statute under review. The right which the state had in the tax was vested and irrevocable, not divestible at the time. The court there found "Under the provisions of the taxing statute the right of the state vests at the instant of death; the tax is due and payable at that moment; the value of the decedent's property at that moment (unaffected by subsequent changes in value) is that upon which the tax is computed." There was a clear donation. In the latter the question dealt with the foregiveness of interest due on defaulted taxes. A great portion of these taxes had been finally determined and the right to them had become vested in the state and not subject to divestment when the tax settlement statute under consideration was enacted. Again there was a clear donation.

We may not lightly disregard the .fact that the present situation arises out of an effort on the part of the 1941 legislature, during the regular 1941 legislative session, to change the method of assessing taxes against certain operating railroads for 1941 and subsequent years. The earlier method had been under continuous attack for many years at great cost and inconvenience to the state. This case presents a perfect example for the application of that very salutary rule of law proscribing interference by the judiciary with the fiscal policies of government committed by the constitution to the legislative branch of our government.

The legislature in the enactment of chapter 291, laws of 1941 was dealing with 1941 taxes, current taxes for the year in which it was in session and for future years. The law was a general one, a plan or formula to provide for railroad taxes over a span of years. In determining the constitutionality of an act of the legislature it must be considered according to its effect as a whole. *Wilentz* v. *Hendrickson, supra.* In considering this legislation it is clear the legislature had no donative intent, no purpose to make a gift. Its constitutionality cannot be determined solely by the revenue obtained under it for any one year and there is nothing to show that the purpose of the act is to produce less rather than more revenue. Clearly it is not unconstitutional.

We conclude that chapter 291, laws of 1941 as amended, does not contravene article 1, paragraph 20 of the constitution in that there was no such vested right in the state to the amount of taxes as had been determined by the State Tax Commissioner as of July 22d, 1941, when the new tax law became effective, as could not be divested in a constitutional manner, and that there was no donation to the respondents contrary to the constitutional prohibition.

Under the opinion of the court below the question whether chapter 291 of the laws of 1941, as amended, precluded the right of appeal from a property valuation assessment for the year 1941 was academic and therefore not decided, but it now becomes necessary to determine this point and we are of the opinion that all rights of appeal were preserved.

A taxpayer has the constitutional right to be heard as to the validity and extent of his liability therefor. *Central of Georgia Railway Co.* v. *Wright,* 207 *U. S.* 127; *Londoner* v. *Denver,* 210 *Id.* 373; *Turner* v. *Wade,* 254 *Id.* 64, and the act by section 31, *R. S.* 54:26–7, gives such a right. The new act in providing under section 73 that "in the first year for which this act is operative, valuations made by the Commissioner under chapters 19 through 39, inclusive, of title 54 of the Revised Statutes shall constitute the basis of property assessment under this act" was to eliminate the necessity for a repetition of assessment machinery already had for the year 1941 since the assessment methodology for property valuations was the same under the new act as it had been under the old.

We are of the opinion that all rights of appeal from 1941 assessments under the new law are preserved exactly as they had theretofore existed under the revised statutes.

The judgment of the Supreme Court is modified in conformity with the conclusions herein expressed. Inasmuch as all parties have prevailed in part, no costs will be allowed.

*For affirmance*—THE CHANCELLOR, BODINE, RAFFERTY, JJ.   3.

*For modification*—THE CHIEF JUSTICE, DONGES, OLIPHANT, WELLS, DILL, McGEEHAN, JJ.   6.