122 N.J. Super. 572 (1971)
301 A.2d 177
TROY HILLS VILLAGE, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
BRUCE FISCHLER AND BETH FISCHLER, HIS WIFE, AND GEORGE F. KUGLER, JR., ATTORNEY GENERAL OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided July 12, 1971.
*574 Mr. Hillard Chapnick for plaintiff (Messrs. Krugman, Chapnick, Grimshaw & Dubow, attorneys).
*575 Mr. Arthur W. Vespignani for defendants (Messrs. Arthur W. Vespignani, attorney).
COLLINS, J.C.C., Temporarily Assigned.
This is an action for declaratory relief to determine the rights of the parties under their lease agreement, and also under Chapter 210 of the Laws of 1970 entitled "Landlord and Tenant  Reprisals Against Tenant." N.J.S.A. 2A:42-10.10 et seq.
Plaintiff owns a 752-unit, multi-family garden apartment in the Township of Parsippany-Troy Hills, Morris County, New Jersey
On June 20, 1968, plaintiff entered into a written lease agreement with defendants Bruce and Beth Fischler, wherein plaintiff leased defendants apartment 307-A for a term of two years commencing July 1, 1968 until June 30, 1970. By memorandum dated March 6, 1970, executed between plaintiff and defendants, the aforesaid lease was extended until June 30, 1971.
Plaintiff admitted that defendant Beth Fischler,
1. Is president of the Troy Hills Village Tenants Association, Inc.
2. Has been active in making complaints to municipal authorities regarding the condition of the plaintiffs property.
3. She and her husband have been active in picketing plaintiff's rental office.
On February 22, 1971 plaintiff mailed a written notice to defendants stating that it intended to terminate their lease effective June 30, 1971.
On September 30, 1970 Chapter 210 of the Laws of 1970 became effective and was enacted into law. N.J.S.A. 2A:42-10.10 et seq. Said statute is entitled "Landlord and Tenant  Reprisals Against Tenant," and contains the following sections:
1. No landlord of premises or units to which this act is applicable shall serve a notice to quit upon any tenant or institute any action against a tenant to recover possession of premises, whether by summary *576 dispossess proceedings civil action for the possession of land, or otherwise:
a. As a reprisal for the tenant's efforts to secure or enforce any rights under the lase or contract, or under the laws of the State of New Jersey or its governmental subdivisions, or of the United States; or
b. As a reprisal for tenant's good faith complaint to a governmental authority of the landlord's alleged violation of any health or safety law, regulation, code or ordinance, or State law or regulation which has as its objective the regulation of premises used for dwelling purposes; or
c. As a reprisal for the tenant's being an organizer of, a member of, or involved in any activities of, any lawful organization; or
d. On account of the tenant's failure or refusal to comply with the terms of the tenancy as altered by the landlord, if the landlord shall have altered substantially the terms of the tenancy as a reprisal for any actions of the tenant set forth in subsection a, b, and c of section 1 of this act. Substantial alteration shall include the refusal to renew a lease or to continue a tenancy of the tenant without cause.
Under subsection b of this section the tenant shall originally bring his good faith complaint to the attention of the landlord or his agent and give the landlord a reasonable time to correct the violation before complaining to a governmental authority.
A landlord shall be subject to a civil action by the tenant for damages and other appropriate relief, including injunctive and other equitable remedies, as may be determined by a court of competent jurisdiction in every case in which the landlord has violated the provisions of this section.
2. In any action brought by a landlord against a tenant to recover possession of premises or units to which this act is applicable, whether by summary dispossess proceedings, civil action for the possession of land, or otherwise, judgment shall be entered for the tenant if the tenant shall establish that the notice to quit, if any, or the action to recover possession was intended for any of the reasons set forth in subsections a, b, c, or d of section 1 of this act.
3. In any action or proceeding instituted by or against a tenant, the receipt by the tenant of a notice to quit or any substantial alteration of the terms of the tenancy without cause after:
a. The tenant attempts to secure or enforce any rights under the lease or contract, or under the laws of the State of New Jersey, or its governmental subdivisions, or of the United States; or
b. The tenant, having brought a good faith complaint to the attention of the landlord and having given him a reasonable time to correct the alleged violation, complains to a governmental authority with a report of the landlord's alleged violation of any health or safety law, regulation, code or ordinance; or
c. The tenant organizes, becomes a member of, or becomes involved in any activities of, any lawful organization; or
*577 d. Judgment under section 2 of this act is entered for the tenant in a previous action for recovery of premises between the parties; shall create a rebuttable presumption that such notice or alteration is a reprisal against the tenant for making such attempt, report, complaint, or for being an organizer of, a member of, or involved in any activities of, any lawful organization. No reprisal shall be presumed under this section based upon the failure of a landlord to renew a lease or tenancy when so requested by a tenant if such request is made sooner than 90 days before the expiration date of the lease or tenancy, or the renewal date set forth in the lease agreement, whichever later occurs.
4. This act shall apply to all rental premises or units used for dwelling purposes except owner-occupied premises with not more than two rental units. * * *.
The complaint seeks a declaratory judgment that the court construe the lease to declare that plaintiff is not obligated to either extend or renew the lease and further to declare Chapter 210 of the Laws of 1970 unconstitutional and ineffective and without force of law.
The Attorney General of the State of New Jersey was joined in this action as a party defendant; however, he has notified the court that he has accepted the complaint in accordance with R. 4:28-4, and at this point will not appear but is reserving his right to intervene at a later date if such a course becomes appropriate and necessary.
Plaintiff moves for summary judgment to declare the "Landlord and Tenant Reprisal Law" unconstitutional.
Both parties agree that there is no genuine issue as to any material fact concerning the constitutionality of the statute in question. The sole issue at this juncture is one of law.
Plaintiff attacks the constitutionality of the Statute on four grounds. They are:
(a) The law divests a person of "vested rights" and denies due process in the substantive sense;
(b) The statute is void because it is vague and ambiguous;
(c) The statute is an illegal interference with a lawful business; and
*578 (d) The statute would create two types of tenants in violation of the equal protection clause.
At the outset it should be pointed out that there is a presumption of the constitutional sufficiency of a legislative enactment, and the burden of proof and persuasion is heavy on the party contesting the statute. David v. Vesta Co., 45 N.J. 301 (1965); Fried v. Kervick, 34 N.J. 68 (1961); Levitt and Sons, Inc. v. Div. Against Discrimination, etc., 31 N.J. 514 (1960); Jamouneau v. Harner, 16 N.J. 500 (1954).
The first point raised by plaintiff is that the statute divests a person of "vested rights" and is therefore void.
Plaintiff brings to the attention of this court the recent case of Engler v. Capital Management Corp., 112 N.J. Super. 445 (Ch. Div. 1970). In that case tenants brought suit for an injunction to restrain landlords from refusing to renew leases at the expiration of their respective terms, and the landlords counterclaimed for eviction. Since Chapter 210 of the Laws of 1970 became effective during the pendency of that litigation, the court did not pass on its constitutionality. However, the court in Engler held that under the doctrine of unclean hands equity barred the landlords from refusing to renew tenants' leases solely because of the tenants' activities with a tenants' association. Plaintiff points out the dictum in that case which stated (at 447) that "a landlord's right of possession upon the expiration of a lease and the right of action to dispossess a tenant holding over without a lease are vested rights which cannot be annulled by subsequent legislation." However, in this case the statute became effective long before the complaint was filed. Thus, the effect of the act is prospective and applies to tenancies which terminate after the effective date of the act.
Our Supreme Court in Pennsylvania Greyhound Lines, Inc., v. Rosenthal, 14 N.J. 372 (1954), stated that the term "vested right" is not defined but, generally, the concept it expresses is that of a present fixed interest which *579 in right reason and natural justice should be protected against arbitrary state action.
The word "vested," when used as descriptive of recognized legal rights, does not exclude divestible rights or interests which can be divested by legislative action. It is used to denote the quality of a present right or interest, even though divestible. Jersey City v. Kelly, 134 N.J.L. 239 (E. & A. 1946).
In Brookchester v. Ligham, 17 N.J. 460 (1955), the Supreme Court held that a contract between a landlord and a tenant would be governed by the police power of the State, and that the police power is superior to the contractual rights of the landlords and tenants.
A traditional and recognized function of the Legislature is to inquire into facts dealing with the protection of the health, morals, safety and general welfare of the people, so that adequate remedial legislation may properly be prepared. The essence of the police power is that the welfare of the people is the supreme law. This principle has been deemed basic to all civil government. Jamouneau v. Harner, 16 N.J. 500 (1954). The State's police power is admittedly a comprehensive one, and the concept of the general welfare has received broad definition in our State. Burton v. Sills, 53 N.J. 86 (1968); Pierro v. Baxendale, 20 N.J. 17 (1955). The police power is an attribute of sovereignty and is inherent in every state. The power escapes exact definition, yet all rights and property are subject to it. Whatever is harmful to the public welfare may be restrained or prohibited. Magierowski v. Buckley, 39 N.J. Super. 534 (App. Div. 1956). Our Supreme Court in Marini v. Ireland, 56 N.J. 130, 146 (1970), recognized a current housing shortage. As was said in Engler v. Capital Management Corp., supra:
The tenant, dissatisfied with housing conditions, no longer may be said to have a viable alternative to move to comparable housing nearby. Difficulties and delays confront him. One resort open to him is to organize or participate in a tenants association formed to present *580 proposals and grievances. The Legislature has now sanctioned such associations by safeguarding their members against retaliatory evictions. [112 N.J. Super. at 448]
The Legislature may validly abolish a common law right or remedy, prospectively, without furnishing an adequate substitute. Magierowski v. Buckley, supra at 557. As was stated in Munn v. Illinois, 94 U.S. 113, 134, 24 L.Ed. 77 (1876), cited with approval in Second Employers' Liability Cases, Mondou v. New York, N.H. & H.R. Co., 223 U.S. 1, 32 S.Ct. 169, 56 L.Ed. 327 (1911):
A person has no property, no vested interest, in any rule of the common law. That is only one of the forms of municipal law, and is no more sacred than any other ... Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances. [223 U.S. at 50]
As was stated in Magierowski v. Buckley, supra:
A state has the constitutional and legislative power to change or modify the common law; the Constitution does not forbid the creation of new rights or the abolition of old ones recognized by the common law, if the purpose is to attain a permissible legislative object. 11 Am. Jur., Constitutional Law, § 196, p. 899. There can be no vested right in the continued existence of a statute or rule of the common law which precludes its change or repeal. 16 C.J.S., Constitutional Law, § 223, p. 646. [39 N.J. Super. at 558]
Private property rights are not absolute. They are always subject to the reasonable exercise of the police power. David v. Vesta Co., 45 N.J. 301 (1965). As Justice Proctor stated in that case:
In the State's exercise of its police power it has placed myriad restrictions upon the property owner's right to use land as he chooses. For example, the law of nuisance, easements by necessity, the division of the benefits of water, sanitary regulations, building codes, zoning ordinances and statutes, and planning regulations, have all been recognized as legitimate restrictions on the use of private property. See Powell "The Relationship Between Property Rights and Civil Rights," 15 Hastings L.J. 135, 140-149 (1963). More pertinent *581 to the issue before us, the rule against perpetuities, the rule against certain restraints on the alienation of land, the rule prohibiting a testator from devising his property subject to a condition which violates the public welfare, and rent ceiling laws are all examples of legitimate police power restrictions upon the right of a private property owner to dispose of his property as he chooses. Ibid. In short, the private property owner has the right to use and dispose of his property as he chooses only so long as his action is not contrary to the general welfare. [at 311]
In the very recent case of State v. Shack, 58 N.J. 297 (1971), Chief Justice Weintraub wrote:
A man's right in his real property of course is not absolute. It was a maxim of the common law that one should so use his property as not to injure the rights of others. Broom, Legal Maxims (10th ed. Kersley 1939), p. 238; 39 Words and Phrases, "Sic Utere Tuo ut Alienum Non Laedas," p. 335. Although hardly a precise solvent of actual controversies, the maxim does express the inevitable proposition that rights are relative and there must be an accommodation when they meet. * * * This process involves not only the accommodation between the right of the owner and the interests of the general public in his use of his property, but involves also an accommodation between the right of the owner and the right of individuals who are parties with him in consensual transactions relating to the use of the property. Accordingly substantial alterations have been made as between a landlord and his tenant. See Reste Realty Corp. v. Cooper, 53 N.J. 444, 451-453 (1969); Marini v. Ireland, 56 N.J. 130, 141-143 (1970).
In Jamouneau v. Harner, supra, the leading decision on the constitutionality of the since lapsed rent control statute, Justice Heher stated:
The basic right of private property perforce yields to an overriding public need. There is an ever-increasing demand for accommodation of the right of property and of contract to the inexorable needs and pressures of our complex economy and intricate social organism. The vital community interest is paramount. Utility rate contracts give way to this attribute of sovereign power; and the contractual arrangements between landlords and tenants as well [16 N.J. at 514]
As to the function of the courts in passing on the constitutionality of a statute, the Supreme Court in Reingold v. Harper, 6 N.J. 182 (1953), said:
*582 Persons and property are subject to all kinds of restraints and burdens in order to secure the general comfort, health, and prosperity of the state; and, when the power is exerted by the lawmaking body, it is not a judicial function to determine which one of two modes was likely to be the most effective for the protection of the public interest in view. That is a legislative inquiry, to be resolved in the light of all the information at hand. Judicial interference in this regard would constitute an invasion of the legislative function. Judicial interposition may be had only where there is no real or substantial relation between the legislative act and a valid public interest under the police power or the measure is, beyond all question a palpable invasion of rights secured by the organic law. [at 194]
It was the intention of the court to take judicial notice that:
1. A housing shortage exists in the Township of Parsippany-Troy Hills and also in Morris County, and
2. There has been a sharp raise in rents for apartments.
Plaintiff's attorney objected and a hearing was held at which plaintiff produced testimony concerning said housing situation in said township, and from such testimony I find that from 1968 to 1971 taxes have increased by .3084%; that rentals of apartments in the various units located in said township have risen between 1965 and May 31, 1971 by 26%; operating expenses have risen by approximately 35%.
There are 6,948 apartments in said township. A census was taken by the township between January 16, 1971 and May 2, 1971 to ascertain the number of persons residing in apartments. The population of the whole township was 55,112 persons. Those residing in apartments totaled 14,461. The census disclosed the number of vacant apartments existing as of the above dates to be 28.
Taking into consideration all of the testimony produced, I find that there is a shortage of housing in Parsippany-Troy Hills and in Morris County, and that rentals for apartment units in these areas have risen sharply.
Plaintiff's next attack on the statute is that it is vague and ambiguous. The fact that a particular statute may need some interpretation by the courts does not render it unconstitutional. The test is whether, measured by common *583 understanding, it fairly and adequately conveys its meaning to all concerned. Laba v. Newark Board of Education, 23 N.J. 364 (1957); Handelsman v. Div. of N.J. Real Estate Comm'n, 101 N.J. Super. 244 (App. Div. 1968). It is sufficiently explicit if it informs those subject to action thereunder as to the conduct which will render them liable to its penalties. Abelson's Inc. v. N.J. State Board of Optometrists, 5 N.J. 412 (1950); Handelsman, supra.
This court finds from the reading of the statute that it is not vague or ambiguous and that it fairly and adequately conveys its meaning to all concerned.
The third attack on the statute by plaintiff is that it interferes with a lawful business and, under the circumstances such as those present in this case, probably it does. The State has general police power to impose business regulations provided there is a substantial relation between the regulation and the protection of the public health, safety, morals or general welfare, and that the means employed be reasonable and not arbitrary. Reingold v. Harper, supra. In light of the presumptions of validity this court has no hesitancy in rejecting plaintiff's third point that Chapter 210 imposes an arbitrary restriction on a lawful business.
Finally, plaintiff argues that the statute would create two types of tenants, in violation of the equal protection clause of the United States Constitution. There is no reason why any tenant's lease would be perpetually guaranteed under the statute in question, since it only raises a presumption. If the presumption is rebutted, the tenant will be evicted. This court finds that the statute does not create two types of tenants. The distinction, if any, is reasonable and not arbitrary. The assurance of like treatment to all persons is not violated by classification which is reasonable and not arbitrary. Where the end is one to which legislative power may properly be addressed, it is enough if it can be seen that in any degree, or under any reasonable conceivable *584 circumstances, there is an actual relation between the means and the end. Jamouneau v. Harner, supra, 16 N.J. at 518.
The Legislature has the function and the responsibility of determining what is needed in the interest of the general welfare. The burden of proof of a deviation from its constitutional sphere has not been sustained. Therefore, this court finds that Chapter 210 of the Laws of 1970 is a reasonable exercise of the police power and as such is constitutional.
This court is not, at this time, passing on the counterclaim raised by defendants, namely; that plaintiff be compelled and directed to renew defendants' lease for a period of two years under the same conditions.
Plaintiff's motion for summary judgment is hereby denied and defendants' motion dismissing the complaint is granted.
Defendant tenants shall continue to pay rent as heretofore without prejudice to the rights of any party.