212 N.J. Super. 427 (1986)
515 A.2d 286
ESTATE OF CHARLES H. KOLKER.
Superior Court of New Jersey, Law Division (Probate), Essex County.
Decided April 9, 1986.
*429 Mahlon L. Fast for executors (Fast & Fast, attorneys).
Daniel I. Lubetkin for creditor Arturo Gardea.
William R. Watkins for creditor United Counties Trust Co. (Lindabury, McCormick & Estabrook, attorneys).
William T. McCue for creditor Juan T. Wright (Burke & Burke, attorneys).
Glenn T. Leonard for creditor Garfield Trust Co. (Cecchi and Politan, attorneys).
Stephen L. Dreyfuss for creditor Lazar G. Schafran (Hellring, Lindeman, Goldstein, Siegal & Greenberg, attorneys).
Jack L. Cohen for creditor and beneficiary Louise Kolker.
MARGOLIS, J.S.C.
This is an action by the executors of an insolvent estate for instructions regarding distribution. There are three classes of creditors. One that obtained a judgment against the decedent during his lifetime; those who proceeded to judgment against the estate based on the decedent's obligations; and general creditors.
*430 The decedent, Charles H. Kolker, died testate on December 23, 1978. The will was probated on March 9, 1979. On December 17, 1979, the executors filed a complaint seeking a declaratory judgment that the estate was insolvent. The total of all claims by creditors has always been greater than the sum available for distribution, even though a substantial amount continues to be available for that purpose. At the time the executors filed for insolvency, they had acknowledged, by operation of law, all creditors' claims relevant to this action. (Other claims not now relevant were separately disputed.). The present claims were acknowledged since statutes in effect at all times after decedent's death obligated the executors to "except" to any disputed claims within three months. See N.J.S.A. § 3A:24-6 (repealed). See also N.J.S.A. §§ 3B:22-7, -8. (No substantial change from § 3A:24-6). The claims were subsequently deemed allowed if not excepted. R. 4:91-3; DeLisle v. Reeves, 96 N.J. Eq. 416, 419-420 (E. & A. 1929). The order limiting creditors barred all further claims against the estate on May 26, 1980.
Throughout this entire period, the distribution of estate assets was governed by N.J.S.A. § 3A:2A-47. That statute denied priority to any particular class of estate creditors. All creditors whose claims were deemed allowed were thus entitled to share equally in estate assets. There was no need to proceed to a judgment on any claim deemed allowed, because a judgment would not increase the creditors' right to share in the distribution. Furthermore, the value of proceeding to judgment under N.J.S.A. § 3A:2A-47 was questionable, because R. 4:91-5 (unchanged since decedent's death) prevented execution upon a judgment entered against an insolvent estate.
This entire controversy arose when, prior to any distribution of the estate, N.J.S.A. § 3A:2A-47 was repealed by the present provision, N.J.S.A. § 3B:22-2(e). The present statute gives priority to "judgments entered against the decedent according to the priorities of their entries respectively," as against "all other claims." N.J.S.A. § 3B:22-2(f). The present statute, *431 part of a comprehensive revision of the probate code, became effective on May 1, 1982  three and one-half years after the date of decedent's death. The provision was made applicable "to any wills of decedents dying on or after September 1, 1978." N.J.S.A. § 3B:1-8. In sum, Title 3B was given retroactive effect to the effective date of the repealed statute (September 1, 1978), which was prior to decedent's death in December 1978.
Two issues must be decided. First, and of novel impression, does the present statute or the now repealed statute in effect at decedent's death govern priority of distribution? Second, which estate creditors, if any, are entitled to interest on their claims? The claim of Arturo Gardea, payable pursuant to an order of Judge Bedford, is not here at issue.

I.

Priority of Distribution.
For the reasons set forth below, this court holds that the distribution of decedent's estate is governed by the former statute. There shall be an equality of distribution without priority to any particular class of creditors. This conclusion is mandated by the language of the present statute, pertinent case law, and the unique equities presented.
At first glance, the requirements of the present statute appear to compel a contrary result. N.J.S.A. § 3B:22-2 provides:
If the applicable assets of the estate are insufficient to pay all claims in full, the personal representative shall make payment in the following order: ...
e. Judgments entered against the decedent according to the priorities of their entries respectively.
f. All other claims.
No preference shall be given in the payment of any claim over any other claim of the same class, and a claim due and payable shall not be entitled to a preference over claims not due.
N.J.S.A. § 3B:1-8 makes 3B:22-2 retroactive to a date prior to decedent's death, and its language is mandatory. See Matter *432 of Will of Reilly, 201 N.J. Super. 306, 311 (App.Div. 1985). The initial impression is further supported by the general rule regarding repealed statutes. "[W]here a statute is repealed and there is no saving clause or a general statute limiting the effect of the repeal, the repealed statute, in regard to its operative effect, is considered as though it had never existed, except as to matters and transactions passed and closed." Parsippany Hills Assoc. v. Rent Leveling Bd., 194 N.J. Super. 34, 42 (App.Div. 1984).
The general rule is qualified, however, by the effect of any applicable saving provision, in this case, N.J.S.A. § 3B:1-5:

The repeal of any sections, acts or parts of acts by the enactment of this title shall not affect any right now vested in any person pursuant to any sections, acts or parts of acts so repealed, nor any remedy where an action or proceeding thereunder has been instituted and is pending on the effective date of this title. [emphasis supplied]
The expressed requirements of the statute are consistent with the general rule. Unless vested rights are involved, the law at the time of decision applies. Parsippany Hills, supra, 194 N.J. Super. at 42-43. It follows that if the right of the general creditors to share equally in decedent's estate "vested" before the former statute was repealed, that right survived the repeal. If not, then the present statute, N.J.S.A. § 3B:22-2, affords priority to judgment creditors.
To resolve the question, it is necessary to define "rights now vested." The statute itself does not provide the answer. Generally, the concept expressed by the term "vested right" is that of a "present, fixed interest which in right, reason and natural justice should be protected against arbitrary state action  an innately just and imperative right that an enlightened free society, sensitive to inherent and irrefragable individual rights, cannot deny...." Pennsylvania Greyhound Lines, Inc. v. Rosenthal, 14 N.J. 372, 384-385 (1954). The term, when used as descriptive of recognized legal rights, "is used to denote the quality of a present right or interest, even though divestible, as distinguished from that the very existence of which is contingent." *433 Jersey City v. Kelly, 134 N.J.L. 239, 244-245 (E. & A. 1946). A "vested interest" is also defined as "a future interest not dependent on an uncertain event, or a fixed, present right of future enjoyment." Black's Law Dictionary (4 ed. 1977) 1735.
The general creditors' right to equal distribution of decedent's estate "vested" before the repeal of N.J.S.A. § 3A:2A-47. Once adversarial parties to litigation have had an opportunity to contest their respective rights, and all sides recognize certain claims of each as beyond dispute, or fixed and accrued, those claims become "vested" subject only to the resolution of the remaining issues in the action. In the case at bar, the right of the general creditors to share equally in the distribution "vested" when their claims against the estate were legally deemed allowed pursuant to R. 4:91, and all further claims against the estate were barred by operation of the order limiting creditors. The creditors were then entitled to rely on the equal enforceability of their respective claims.
This is not to say that every estate creditor had a "vested right" in obtaining payment in full of its entire claim. Instead, each was entitled to rely on the executors' legal inability to dispute any claim once it was deemed allowed. R. 4:91. In fact, the executors were obligated to treat them equally, and to pay their claims on a pro rata basis. Only the ultimate amount payable on each claim by the estate remained to be determined by a final accounting. The right of each creditor to share in the distribution subject to funds available "vested" for purposes of N.J.S.A. § 3B:1-5. Accordingly, this court holds that the rights of all creditors to share equally in the distribution of decedent's estate survived the repeal of N.J.S.A. § 3A:2A-47.
This conclusion is supported by an analysis of pertinent decisional law addressing the issue of "vested rights." The common thread visible in each of the following cases is that the court recognized a right as "vested" where, as here, the underlying claim was acknowledged as beyond any dispute. By *434 contrast, courts have denied "vested" status to alleged rights which were either contingent, unsettled, unproved at the time of alleged "divestiture," or otherwise contested.
In Kruvant v. Mayor & Council of Tp. of Cedar Grove, 82 N.J. 435 (1980) the Court refused to apply the law in effect at the time of its decision in the context of an improper denial of a zoning variance. The trial court determined that the applicant was entitled to the variance. Its conclusion was never appealed, and was thus beyond dispute. Notwithstanding the applicant's entitlement, the trial court had also given the township time to amend the ordinance to lawfully preclude the applicant's intended use. Having failed to lawfully amend the ordinance in timely fashion, the township could not later deny the applicant's right to a variance under the original ordinance. Id. at 445.
Cureton v. Joma Plumbing & Heating Co., 38 N.J. 326 (1962) is also instructive. Although the case did not raise the issue of which rights survived a repealed statute, the Court held that workers' compensation benefits which had accrued prior to death had "vested" in the decedent, and were thus payable to his estate. Id. at 336. The case illustrates that a debt owed need not actually be paid in order for the right to payment to be "vested." That decedent's estate had not been distributed prior to the repeal of N.J.S.A. § 3A:2A-47 did not affect the creditor's "vested rights" to share equally in distribution. As in Cureton, the right to some benefit had vested because it could no longer be contested.
The court in Parsippany Hills Assoc. v. Rent Leveling Bd., 194 N.J. Super. 34 (App.Div. 1984) recognized tenants' rights to real estate tax rebates under a local rent-control ordinance. Because the town council and the tax court had affirmed the tenant's right to a rebate, the expiration of the ordinance prior to disposition of the appeal did not divest the tenants of the right to which they were otherwise entitled. Id. at 44.
Finally, in Eyre v. Bloomfield Savings Bank, 177 N.J. Super. 125 (Ch.Div. 1980), a widow asserted her statutory right to an *435 intestate share of her husband's estate. The basis of her entitlement was her husband's omission of her as a beneficiary under his will, which will was executed before the marriage and unrevised since. The court held that the widow's right to an intestate share "vested," notwithstanding a retroactive amendment to the statute after her suit was filed which made it inapplicable to the will in question. Id. at 128-129. At the time she brought her action, she was entitled to rely on the statute then in effect. Ibid. So, too, in the case at bar. Even upon passage of Title 3B, the creditors were entitled to rely upon the equality of distribution under the repealed statute for claims allowed. R. 4:91-3.
Decisions in which courts have declined to recognize rights as "vested" are distinguishable. In State v. Roberts, 21 N.J. 552 (1956), the State, pursuant to its sovereign right to escheat, had the power to divest its creature municipality of the right to receive property. Before the "holding period" for claims against an estate under the repealed statute had lapsed, the municipality could not receive money from the estate. Repeal of the statute during pendency of the holding period did not implicate a "vested right" because the municipality's entitlement was inchoate. Id. at 555-56. The Court in In re Holibaugh, 18 N.J. 229 (1955) held that the repeal of a statute which afforded the natural kin of an adopted adult a right of distribution did not "vest" rights of such relatives when the statute was repealed prior to decedent's death. Status as an heir is merely an expectation rather than a "vested right" prior to the date of death. Id. at 234.
In DiAngelo v. Keenen, 112 N.J.L. 19 (1933), it was held that upon the statutory abolition of a government commission, officeholders who were without an independent statutory or contractual right to remain in office lacked any "vested right" to tenure. Id. at 22. "Vested rights" were again denied in Prudential Ins. Co. v. Mayor & Bd. of Council, 196 N.J. Super. 482 (App.Div. 1984). There, a landlord's claim to rent surcharge predicated on tax reassessment in condominium conversion *436 was properly barred by legislation effective prior to reassessment which proscribed such reassessment as the basis for a surcharge. Id. at 485. No question of retroactivity was presented. Ibid.
In Redeb Amusement, Inc. v. Tp. of Hillside, 191 N.J. Super. 84 (Law Div. 1983) it was decided that a moratorium on new arcade licenses precluded re-application by applicant in spite of the improper denial of the license prior to the moratorium. Id. at 102-103. There was never any guarantee or admission that the applicant would be entitled to a license upon reapplication. Thus, applicant never acquired a "vested right" to the license before the moratorium.
The arguments in support of a priority for judgment creditors are not compelling. The judgment creditors argue that nothing in the repealed statute gave general creditors anything which rose to the level of a "vested right." At best, they contend that the general creditors had a mere expectation in the continuance of a general law. See, e.g., Prudential Ins. Co. v. Mayor & Bd. of Council, supra, 196 N.J. Super. at 486. That a mere expectation is not "vested" is obvious. The general creditors of decedent's estate, however, had more than a mere expectation. Their claims were deemed "allowed," and they had done all that was necessary to protect their right to an equal distribution.
Another question is raised by the judgment creditor which obtained its judgment in 1977, during decedent's lifetime. The statute then in effect, N.J.S.A. § 3A:24-2 provided for priority to judgment creditors. N.J.S.A. § 3A:24-2 was repealed by N.J.S.A. § 3A:2A-47, effective September 1, 1978. It is urged by this creditor that its judgment should thus receive a priority. The thrust of this contention is that under the logic of applying "vested rights" to a repealed statute, this creditor's rights were fixed earlier, as of the date of its judgment. This assertion is without merit. The judgment creditor could not obtain a "vested right" in statutory distribution *437 before the decedent's death because at that time there could be no distribution. When the decedent died, the equal distribution statute was in effect  and had repealed the earlier statute which had given priority to judgment creditors. The rule, of course, is that the right to distribution does not "vest" until the date of death. Holibaugh, supra, 18 N.J. at 235.
To summarize, in the context of this case a "vested right" may thus be defined as a right which is fixed, certain and legally beyond dispute and which cannot thereafter be controverted by the action or inaction of any party or by operation of law. Such a right is not "vested" when it is either contingent, unsettled, unproved or otherwise contestable. Claims deemed allowed by an estate, even though unpaid, are "vested" for purposes of establishing statutory distribution.
Aside from the compelling rationale above, the equities alone demand the identical conclusion: the right of all creditors to equal distribution survived the repeal of N.J.S.A. § 3A:2A-47. The Court in Kruvant, supra, stated that the general rule requiring a court to apply the law in effect at the time of decision is "not inexorable." Id., 82 N.J. at 442. The peculiar facts of each case must be carefully weighed. In addition, the court is guided by the maxim that "equity regards as done that which ought to be done." See, e.g., Cureton v. Joma Plumbing and Heating Co., 38 N.J. 326, 335 (1962). Once its claim was allowed, it was reasonable for any creditor to rely upon the claim as having "vested." N.J.S.A. § 3B:1-5. To expect the creditors whose claims were so allowed to rush to the courthouse in an endeavor to obtain a judgment simply because Title 3B was passed in 1982, three years later, strains credulity.

II.

Interest.
There remains for determination the question of interest. It is well said that "there is no subject in the reference to which *438 there is greater conflict and confusion ... than that of interest." Agnew Co. v. Paterson Bd. of Ed., 83 N.J. Eq. 49, 67 (Ch. 1914). The award of interest is usually dependent on the nature of the claim. For the purpose of the instant action, there are three types of claims presented:
(A) those by creditors with judgments;
(B) those by creditors whose claims include interest created by contract;
(C) all other claims.

A.

Claims by Judgment Creditors.
The allowance of interest on judgments is an accepted practice in New Jersey. Simon v. N.J. Asphalt & Paving Co., 123 N.J.L. 232, 234 (Sup.Ct. 1939) Between a judgment creditor and a judgment debtor, the creditor is entitled to collect not only the principal amount of the judgment but also interest thereon until the judgment is paid; this on the theory that interest is an increase of damages for the detention of the debt. Lindsay v. Boles, 61 N.J. Super. 516, 518 (Cty.Ct. 1960). Further, the grant of post-judgment interest is ordinarily not an equitable matter within the court's discretion but is, as a matter of long-standing practice, routinely allowed. Bd. of Educ., City of Newark, Essex Cty. v. Levitt, 197 N.J. Super. 239, 244-45 (App.Div. 1984).
The practice is reflected in R. 4:42-11(a), which sets the rate of interest on judgments at fixed percentages based on the date of entry, "except as otherwise ordered by the court and except as may be otherwise provided by law." Under the rule, judgment creditors are entitled to simple interest at the appropriate rate from the date of judgment until the date of payment. Neither the decedent's death nor the insolvency of the estate toll the running of interest period. See Lowentraut v. Jackson, 82 N.J.L. 402, 404 (E. & A. 1911) (Regardless of insolvency, creditors are entitled to their ratable share not only of principal but also of interest due on their claims).
*439 Consequently, the judgment creditors are entitled to interest from the date of entry to the date of distribution. Nothing indicates that the judgments at issue contain any language restricting interest or that interest is unavailable by law. R. 4:42-11(a).

B.

Interest Created by Contract.
Interest created by contract (e.g., interest provided for in promissory notes or mortgages) is a form of compensation fixed by the parties for the use, detention or forebearance of money or its equivalent. Deerhurst Estates v. Meadow Homes, 64 N.J. Super. 134, 154 (App.Div. 1960). Since it is grounded in contract, it is part of the bargain struck when the loan is made. It is generally recoverable as of right along with principal. Ibid. Thus, such interest is part of the "principal claim" and not recoverable at a rate greater than that contracted. See Shadow Lawn Sav. and Loan Ass'n. v. Palmarozza, 190 N.J. Super. 314, 317 (App.Div. 1983) (Plaintiff precluded from earning compound interest following default when contract did not so provide). "It is elementary that interest as compensation for the use, detention or forbearance of money is a matter of contract ... The contract includes the method of computation, expressed or legally implied." Silverstein v. Shadow Lawn Savings & Loan, Ass'n., 51 N.J. 30, 43 (1968).
Thus, creditors whose claims include contract interest are entitled to recover that interest as of right, along with principal, as part of their overall claim. Nothing submitted by any party persuades the court that it may or should reduce the contract rates of interest or otherwise modify the protections to which the parties themselves agreed.

C.

All Other Claims.
Prejudgment interest usually stands on a different footing than postjudgment interest or contract interest. An award of *440 prejudgment interest is not determined by court rule except in tort actions. R. 4:42-11(b). Further, the allowance of prejudgment interest in contract and contract-like actions, even on liquidated claims, is not a litigant's right but rests rather in the court's discretion, required to be exercised with equitable principles and considerations in mind. Bak-A-Lum Corp., v. Alcoa Building Prod., 69 N.J. 123 (1976).
Such interest is not necessarily considered punitive. It may be considered compensatory to repay lost use of money during the delay. Busik v. Levine, 63 N.J. 351, 358 (1973). It may also be viewed as the benefit of the earlier entitlement. Rova Farms Resort v. Investors Ins., Co., 65 N.J. 474, 506 (1974).
This court might ordinarily deny interest on claims which were either not reduced to judgment, or which did not provide a contractual rate of interest added to principal. The equities of this case, however, are clear. Decedent's estate was insolvent. All creditors knew the estate was insolvent. Those with judgments were protected by R. 4:42-11(a). Those who relied on a contractual rate of interest were entitled to claim the interest as part of the overall debt. As noted above, by operation of statute and court rule, all other creditors' claims were "deemed allowed." In fact, they thus became liquidated. There was nothing further that these creditors had to do to establish their claims. To compel a visit by them to the courthouse to obtain a judgment solely for the purpose of adding interest to their claims would be as meaningless as it would have been to require them to seek a judgment when the distribution statute changed. Such creditors, once their claims were deemed allowed, were equally deprived of the use of their money. Equitably, for purposes of interest, they should be placed in the same position as the other creditors.
The executors urge that interest should not be payable to any creditor regardless of priority or status of claim. This result, they suggest, is governed by N.J.S.A. § 3B:22-2 and R. 4:91-5. They posit that because when the payment of any interest upon *441 distribution is omitted from the statute the award of interest must be denied. This position ignores the general rules applicable to interest, and presumes a legislative denial of a routine practice simply by omission. The better assumption is that the Legislature intended interest to be payable pursuant to accepted practices, unless the award thereof was expressly prohibited. As noted in the above discussion relating to priority, R. 4:91-5 is inapplicable to the case at bar.
In their complaint, the executors also request that "post-earned" interest and surplus reserves be paid to the beneficiary. This request is without authority or merit and is denied.
Finally, it is asserted by the beneficiary that once an estate comes into custodia legis, interest no longer accrues on claims against it. Pritchett v. Newbold's Ex'rs., 1 N.J. Eq. 571 (Ch. 1832); Hoover Steel Ball Co. v. Schaefer Ball Bearing Co., 90 N.J. Eq. 515 (Ch. 1919). The applicability of Pritchett to estates is doubtful in light of Lowenstraut v. Jackson, 82 N.J.L. 402 (E. & A. 1911), and Hoover dealt primarily with corporate insolvency and its own unique rules. Accordingly, this assertion by the beneficiary fails.
Therefore, in addition to judgment creditors, all creditors whose claims were "deemed allowed" by the executors acquired a "vested right" in equality of distribution under N.J.S.A. § 3A:2A-47. This right survived the repeal of N.J.S.A. § 3A:2A-47 by operation of N.J.S.A. § 3B:1-5. The judgment creditors will receive interest on their judgments from the date of entry until the date of payment in accordance with R. 4:42-11(a). Creditors entitled to interest pursuant to contract shall receive same from the date interest began running to the date of payment. All other creditors are entitled to interest pursuant to the rates set in R. 4:42-11(a) from the date their claims were deemed allowed by the estate until the date of payment. Distribution shall be made as stated herein with interest as specified.
Judgment accordingly.