38

711 A.2d 331

ANN DAVIS HARRIS, PETITIONER–RESPONDENT, v. BRANIN
TRANSPORT, INC., RESPONDENT–APPELLANT, v. SECOND
INJURY FUND RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 13, 1998—Decided May 22, 1998.

Before Judges SHEBELL, D'ANNUNZIO and COBURN.

*Jeffrey D. Newby,* argued the cause for Branin Transport, Inc. (*Weber, Goldstein, Greenberg & Gallagher,* attorneys; *Mr. Newby,* on the brief).

*George T. Kotch,* argued the cause for Ann Davis Harris (*George T. Kotch, P.C.,* attorney; *Mr. Kotch* and *Robin D. Buser,* on the brief).

*Lois J. Gregory,* Senior Deputy Attorney General, argued the cause for Commissioner of Labor (*Peter Verniero,* Attorney General of New Jersey, attorney; *Mary C. Jacobson,* Assistant Attorney General, of counsel; *Ms. Gregory,* on the brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

On August 17, 1976, petitioner's husband, John Oliver Harris, was killed in a tractor trailer collision during the course of his employment with respondent, Branin Transport, Inc. On February 16, 1979, an Order of Dependency Benefits was entered by the Division of Workers' Compensation (Division) awarding petitioner widow-dependency benefits at the rate of $128.00 per week subject to reduction by earnings after 450 weeks of compensation, as provided in *N.J.S.A.* 34:15–13.

Following the Legislature's amendment of *N.J.S.A.* 34:15–13 eliminating the credit, the Second Injury Fund, as custodian of the State Disability Supplemental Benefits program, began supplemental payments of benefits to petitioner, as widow, on July 25, 1995, despite her earning in excess of $128.00 per week. On March 18, 1996, petitioner filed a notice of motion against Branin for the payment of dependency benefits noting the elimination of the earned income credit.

On May 2, 1996, Branin filed an answer to petitioner's notice of motion. On July 26, 1996, the Judge of Compensation held a hearing on the application, at which time stipulations as to the operative facts were placed on the record. On September 13, 1996, petitioner filed a notice of motion for an order to implead the

Second Injury Fund. On September 27, 1996, an order was entered joining the Second Injury Fund as a party respondent.

On October 18, 1996, another hearing was held before the compensation judge and testimony was presented. On December 17, 1996, the judge issued a reserved decision holding that *N.J.S.A.* 34:15-13 was constitutional and petitioner was entitled to receive dependency benefits effective July 25, 1995. The judge also awarded petitioner counsel fees to be paid by Branin in the amount of $19,500.

The order granting dependency payments was entered on December 27, 1996. On January 6, 1997, Branin filed its notice of appeal from the order. On January 23, 1997, Branin filed an amended notice of appeal challenging the award of attorney's fees. On February 10, 1997, the judge addressed Branin's objection to the award in a Supplemental Decision. Branin thereafter withdrew the amended appeal.

On the original dependency claim petition, an order was entered on April 10, 1979, awarding petitioner dependency benefits for herself and her six dependent children. The children would receive dependency benefits until each one of them reached 18 years of age, and thereafter the petitioner would receive $128.00 per week through widowhood, subject to a reduction by earnings after the first 450 weeks, as then provided by *N.J.S.A.* 34:15-13.

The parties stipulated that petitioner's wages have exceeded $128.00 per week since January 14, 1980. Petitioner received her last dependency payment on April 5, 1994, when decedent's youngest child turned 18 years of age. Petitioner has not remarried and remains a dependent under *N.J.S.A.* 34:15-13, despite the fact that her earnings are above $128.00 per week.

In 1976, *N.J.S.A.* 34:15-13, originally provided:

This compensation shall be paid, in the case of a surviving spouse, during the entire period of survivorship, or until such surviving spouse shall remarry except that any earnings from employment by the surviving spouse after 450 weeks of compensation have been paid, shall be deducted from the compensation thereafter payable to the spouse....

[*N.J.S.A.* 34:15–13(j).]

On July 25, 1995, the Workers' Compensation Act was amended to provide:

> This compensation shall be paid, in the case of the surviving spouse, during the entire period of survivorship, or until such surviving spouse shall remarry....

[*N.J.S.A.* 34:15–13(j).]

Thus, the amendment eliminated the credit against continuing dependency benefits for earnings paid to a dependent spouse after the initial 450 week dependency period has expired.

Petitioner brought the matter before the Division to have her dependency benefits restored, as of the effective date of the statute, July 25, 1995. The Second Injury Fund voluntarily reinstated Petitioner's supplemental dependency benefits based on the amendments.

The judge in his reserved decision first observed that a surviving spouse who remains unmarried has a vested right to Workers' Compensation benefits, as follows:

> [P]aragraph (j) provides that a surviving spouse who remains unmarried shall have a right to Workers' Compensation benefits for four hundred and fifty weeks and after the expiration of that four hundred and fifty weeks, the right to Workers' Compensation benefits shall continue, but any earnings which are obtained from employment after the end of four hundred and fifty weeks, shall be offset against the Workers' Compensation benefits. So there is still a vested right to Workers' Compensation benefits in a surviving spouse who has not remarried after the end of four hundred and fifty weeks.

The judge continued by observing that once wages stopped, the right to receive benefits "dollar for dollar" arose again. He reasoned that wages from employment suspended but did not terminate benefits, as the right to benefits is a vested right. He concluded:

> When the Legislature in 1995 amended the law, all they did was say that the set-off against the dependency benefits after four hundred and fifty weeks, which benefits were already vested in the surviving spouse, were no longer subject to reduction because of wages. There is no issue here of the Legislature changing any vested rights which seems to be the concern of the case law on this subject. The Legislature merely removed a right of the respondent to recoup benefits which the petitioner might have earned through wages.

The Judge of Compensation did not consider the effect of the amendment on the employer's right to the off-set and whether that was a vested right.

Branin first argues that the plain language of the amendment does not support retroactive application of the statute. *N.J.S.A.* 34:15–13(j), in part, provides:

This compensation shall be paid, in the case of surviving spouse, during the entire period of survivorship, or until such surviving spouse shall remarry and, in the case of other defendants . . .

2. This Act shall take effect immediately.

Branin contends that the language stating that the Act shall take effect immediately should be given its plain meaning, and the amendment should apply only to claims for benefits that arise after July 1995. In *Street v. Universal Maritime,* 300 *N.J.Super.* 578, 581, 693 *A.2d* 535 (App.Div.1997), we addressed whether an amendment to the Workers' Compensation Act, chapter 74, which eliminated State jurisdiction for maritime workers seeking compensation for job-related injuries applied retroactively to bar claims filed before the amendment's effective date. The language of that amendment also provided that it "shall take effect immediately." *Id.* at 581, 693 *A.2d* 535. We held that the language was not dispositive on the issue of retroactivity, noting that the language begged the question of "whether the amendment, though effective immediately, applies to claims filed prior to its effective date." *Ibid.* (citing *Bunk v. Port Authority of New York & New Jersey,* 144 *N.J.* 176, 194, 676 *A.2d* 118 (1996)). Likewise, there is no express language of retroactivity in the amendment under consideration, and the language that the amendment shall apply "immediately" does not disclose the Legislature's intent as to which cases will be affected by the change.

At the hearings on the amendment, the Committee took the testimony of dependent spouses and children who were then being detrimentally affected by the employer's credit, pursuant to the statute at that time. Additionally, the fiscal note to Assembly bills No. 2280 and 2305 appears to support the argument that the amendment was meant to apply to benefits established prior to the

amendment, as it contains an economic analysis of how much it will cost to provide benefits for dependents who are currently affected by the offset. The fiscal note provided:

[T]he department indicates that with regard to the elimination of the employment offset for dependents after the first 450 weeks of compensation, there are 136 dependent spouses *currently receiving reduced benefits due to employment.* The department estimates that if this bill is enacted, additional benefits totalling approximately $800,000 per year would be payable by insurance carriers and self-insured employers from this provision. In addition, of these 136 case[s], 100 are based upon pre–1980 deaths and are therefore eligible for supplemental benefits payable from the Second Injury Fund. *Thus, the bill would require total additional supplemental benefits of approximately $1.3 million (inclusive of the $800,000) to be paid from the fund during the first year, with annual increases thereafter.*

[Emphasis added.]

Branin urges that this paragraph utilizes current cases for projections only and points out that the first paragraph of the note states that the amendment "eliminates certain reductions of workers' compensation paid to ... other dependents of workers who *die....*" Branin contends that if the amendment was supposed to apply to existing cases, the note would have referred to dependents of workers "who die" or "who have died." In the alternative, Branin argues that if the economic analysis presupposes that the amendment is to be applied to existing cases, then the analysis cannot be interpreted as representing legislative intent but only an economist's opinion.

■ A fiscal note is required when a proposed bill will increase or decrease expenditures. *N.J.S.A.* 52:13B–6. The note is prepared by the Director of the Division of Budget and Accounting in the Department of the Treasury. *Ibid.* The note must contain "the most accurate estimate possible, in dollars, concerning the amount by which expenditures or revenues will be increased or decreased for the State or any of its political subdivisions." *N.J.S.A.* 52:13B–7(b). As an essential component for the passage of any bill requiring a change in expenditures, a fiscal note may be utilized to determine legislative intent. *See Pine Belt Chevrolet, Inc. v. Jersey Central Power & Light Co.,* 132 *N.J.* 564, 579, 626 *A.*2d 434 (1993); *Moore v. Moore,* 114 *N.J.* 147, 164 n. 5, 553 *A.*2d

20 (1989); *Barone v. Department of Human Services,* 107 *N.J.* 355, 361, 526 *A.*2d 1055 (1987). Unquestionably, the tone of the economic analysis contained in the fiscal note to the amendment gives some weight to the argument that the Legislature intended existing cases to be considered under the amendment.

Next, Branin turns to Assembly bills No. 2280 and 2305 to support the argument that the amendment does not apply to existing cases. No. 2305 contained an amendment to *N.J.S.A.* 34:15–13 providing for workers' compensation for the surviving spouses of certain fire and police personnel. The bill contained express language eliminating the offset to existing cases:

> [I]f the spouse is a surviving spouse of a policeman or fireman who died in the performance of duty on or after January 1, 1980, any earnings from employment by the surviving spouse after 450 weeks of compensation have been paid and before the effective date of this act shall be deducted from the compensation payable to the spouse, but no earnings of the spouse on or after the effective date shall be deducted.

However, when the amendment was adopted, this language was dropped. Branin argues that this demonstrates the Legislature's intent to apply the amendment only to cases that arise after the passage of the amendment.

Petitioner, however, argues that No. 2305 applied only to the survivors of policemen or firemen, and that by dropping the language in the eventual amendment, the Legislature did not reject application of the amendment to existing cases. Instead, petitioner argues that the Legislature rejected the limiting of the amendment only to existing claims of the families of policemen and firemen in favor of applying it to all existing claims. We find this aspect of the legislative history to be ambiguous, and it cannot be considered helpful on the issue.

 The Workers' Compensation Act's purpose is to provide a method of compensation for the injury or death of an employee, irrespective of the fault of the employer or contributory negligence and assumption of risk of the employee. *Seltzer v. Isaacson,* 147 *N.J.Super.* 308, 313, 371 *A.*2d 304 (App.Div.1977). With regard to the dependency section, the Act should be construed

liberally to make the cost of work-connected injuries part of the cost of the employer's product. *Close v. Kordulak Bros.*, 44 *N.J.* 589, 604, 210 *A.2d* 753 (1965); *Petrozzino v. Monroe Calculating Machine Co.*, 47 *N.J.* 577, 580, 222 *A.2d* 73 (1966). The amendment was passed to enable widows to have the benefit of their earnings. Interpreting the amendment to have retroactive effect promotes the public interest in providing financial assistance to widows in time of need regardless of their employment status.

On balance, while the legislative history appears to favor retrospective application of the amendment, as is demonstrated by the hearings and the fiscal note, there does not appear to be an "unequivocal expression of legislative intent." *See Street, supra,* 300 *N.J.Super.* at 581, 693 *A.2d* 535. Nevertheless, applying the amendment retroactively would give the benefits of the amendment to present dependents such as those who testified at the hearing and who have been detrimentally affected under the prior statutory scheme, thereby resulting in a liberal and remedial application in keeping with the general purpose of the Workers' Compensation Act.

Branin asserts that it had a legitimate expectation that it was entitled to a credit for all wages earned after the passage of the initial 450 week statutory time frame, and that its obligation to provide benefits would be resolved by the law in place at the time of the employee's death. Branin also maintains that manifest injustice will result if the amendment is applied to existing claims.

Branin argues that at the time of decedent's death, petitioner was 22–years old and the insurance carrier adjusting for the risk in 1976 took into account that petitioner would eventually return to the work force. Branin argues that an amendment 19 years after the decedent's death would constitute manifest injustice, because it would negate the insurance carrier's risk assessment.

"In the typical setting concerning 'manifest injustice,' reliance on existing law by the affected party and the unfairness of changing that law are the important features in making the

retroactivity decision." *In re D.C.*, 146 *N.J.* 31, 58, 679 *A.*2d 634 (1996). The inquiry focuses on whether retroactive application will result in unfairness or inequity. *Ibid.* The application of an amendment cannot be said to result in manifest injustice, just because it upsets a party's expectations. *Usery v. Turner Elkhorn Mining Co.*, 428 *U.S.* 1, 16, 96 *S.Ct.* 2882, 2893, 49 *L.Ed.*2d 752 (1976). "This is true even though the effect of the legislation is to impose a new duty or liability based on past acts." *Ibid.*

Even though the insurer may have adjusted for the eventual possibility that petitioner would work, this was merely an expectation. Petitioner had a vested right to benefits regardless of her age and likelihood of earning wages. Under the amendment, the employer is required to pay an amount it otherwise would have had to pay if petitioner were no longer employed. Branin is in no worse a position than if petitioner had not become employed. We fail to see how making an employer pay an amount it would have been obligated to pay if petitioner had been unemployed constitutes a manifest injustice. While of concern to the employer, this result cannot be characterized as an injustice. Here, Branin's maximum exposure was established by the judgment and it has not been enlarged by the elimination of the statutory credit.

We recognize that the amendment intrudes upon the employer's expectations, however, the Legislature has made the judgment that the public interest promoted by the amendment outweighs the importance of the employer's interest that is impaired. *Rothman v. Rothman*, 65 *N.J.* 219, 225, 320 *A.*2d 496 (1974). A state "may, in the exercise of the police power, enact a statute to promote the public health, safety, morals, or general welfare." *Id.* at 225, 320 *A.*2d 496. So long as the public interest outweighs the private right, an Act can apply retroactively and diminish or destroy that right. *Ibid.* Retroactive civil legislation ... generally does not violate due process unless it results in "particularly harsh and oppressive" consequences. *Twiss v. State*, 124 *N.J.* 461, 470, 591 *A.*2d 913 (citing *State, Dep't of Envtl. Protection v. Ventron Corp.*, 94 *N.J.* 473, 498, 468 *A.*2d 150 (1983)).

As we have indicated, such "harsh and oppressive" consequences are not present in this case.

We reject Branin's position that it is unconstitutional to retroactively apply the July 1995 amendment to a compensable death which pre-dated the effective date of the amendment because such an application would violate its vested rights to the offset. Application of the amendment is not truly retroactive. We agree with the Commissioner of Labor's position that applying the amendment to existing claims constitutes, at most, secondary retroactivity.

Retroactive acts "operate on transactions which have occurred or rights and obligations which existed before passage of the act." 2 *Sutherland, Statutory Construction* § 41.01 (5th ed.1993). In contrast, a prospective statute "operates on conduct, events, and circumstances which occur after its enactment." *Ibid.* However, many statutes cannot be characterized as being definitively retroactive or prospective, since they possess a combination of both qualities. *Ibid.*

A pure retroactive statute changes what the law was in the past. *Bowen v. Georgetown Univ. Hospital,* 488 *U.S.* 204, 220, 109 *S.Ct.* 468, 477, 102 *L.Ed.*2d 493, 507 (1988) (Scalia, J., concurring). A law or rule that has exclusively future effects, but that affects past transactions is "secondarily retroactive." *Ibid.* A secondarily retroactive law is valid so long as it is not arbitrary or capricious. *Ibid.; see also Citizens for Equity v. New Jersey D.E.P.,* 252 *N.J.Super.* 62, 599 *A.*2d 516 (App.Div.1990), *aff'd,* 126 *N.J.* 391, 599 *A.*2d 507 (1991); *Prudential Ins. Co. v. Mayor and Bd. of Council,* 196 *N.J.Super.* 482, 483 *A.*2d 417 (App.Div.1984).

In this case a pure retroactive change would result in petitioner receiving all of the benefits from prior years that were lost as a result of the employer's credit. Instead, the amendment only applies to the future receipt of benefits as a result of the elimination of the credit, and is therefore, merely secondarily retroactive.

■ In any event, we are satisfied that the retroactive application of the amendment disrupts only an expectation and not a vested right of the employer. A vested right is defined as a "present,.fixed interest which in right, reason and natural justice should be protected against arbitrary state action-an innately just and imperative right that an enlightened free society, sensitive to inherent and irrefragable individual rights, cannot deny...." *Estate of Kolker*, 212 *N.J.Super.* 427, 432, 515 *A.*2d 286 (Law Div.1986) (quoting *Pennsylvania Greyhound Lines, Inc. v. Rosenthal*, 14 *N.J.* 372, 384–85, 102 *A.*2d 587 (1954)). The term "is used to denote the quality of a present right or interest, even though divestible, as distinguished from that the very existence of which is contingent." *Id.* at 432–33, 515 *A.*2d 286 (quoting *Jersey City v. Kelly*, 134 *N.J.L.* 239, 244–45, 47 *A.*2d 354 (E. & A.1946)).

■ Clearly, a dependents' rights under the Workers' Compensation Act are vested at the date of decedent's death. *See McAllister v. Board of Education*, 42 *N.J.* 56, 198 *A.*2d 765 (1964) (holding that the Workmen's Compensation Act vests a right to compensation in dependents at the date of death of employee); *see also Hansen v. Brann & Stewart, Co.*, 90 *N.J.L.* 444, 103 *A.* 696 (1917) (holding that petitioner acquired a vested right in compensation benefits upon the death of her husband, which could not be legally abridged by subsequent legislation eliminating benefits upon remarriage).

However, it does not follow that an employer's right to a credit also vested at that time. Under some circumstances, a credit can constitute a vested right if it constitutes a "legal exemption from a demand made by another." *Levin v. Livingston Township*, 62 *N.J.Super.* 395, 404, 163 *A.*2d 221 (Law Div.1960) (citing *Wanser v. Atkinson*, 43 *N.J.L.* 571, 575 (Sup.Ct.1881); *Morin v. Becker*, 6 *N.J.* 457, 470, 79 *A.*2d 29 (1951)), *aff'd in part, rev'd in part*, 35 *N.J.* 500, 173 *A.*2d 391 (1961).

Under pre-amendment *N.J.S.A.* 34:15–13, the employer was entitled to an offset for the amount of wages that a dependent spouse was able to obtain. In the case of an employer's right to

the credit, the employer's actual entitlement to the setoff is not present and fixed until the dependent's income is actually obtained "from employment." *N.J.S.A.* 34:15–13(j) (amended 1995). It is an advantage that depended on the continued viability of the statute. The employer had no right to depend on the statute's continued application as the employer's right to the credit did not vest until the dependent's income was actually obtained from employment on each occasion when the statute was in effect. We conclude that so contingent a credit cannot be classified as a vested right prior to the actual realization or ripening of the credit. As no vested right of the employer is violated, there is no constitutional infirmity in the secondarily retroactive application of the amendment.

The Order of the Judge of Compensation is affirmed.