753 A.2d 770 (2000)
332 N.J. Super. 392
In the Matter of the GUARDIANSHIP OF B.L.A. and T.A.
Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County.
Decided March 22, 2000.
*772 Ann Marie Seaton, Senior Deputy Attorney General, for New Jersey Division of Youth and Family Services (John J. Farmer, Jr., Attorney General of New Jersey, attorney).
Russell S. Heckler, Atlantic Highlands, for defendant M.A. (Russell S. Heckler, attorney).
Linda D. Costabile, Oceanport, for defendant R.A. (Linda D. Costabile, attorney).
Christina A. Frost, Trenton, for minors B.L.A. and T.A. (Ivelisse Torres, Public Defender, attorney).
*771 HAYSER, J.T.C., temporarily assigned.
Did the failure of the New Jersey Division of Youth and Family Services (hereinafter referred to as "DYFS") to provide reunification services to the family in this matter constitute an unfair retroactive application of N.J.S.A. 9:6-8.87 to the facts of this case, since the significant circumstances that activated this statutory provision took place before the statutory enactment? That is the central question presented in this proceeding commenced by DYFS pursuant to N.J.S.A. 30:4C-11.3 Apparently, this issue has not been addressed in any reported decision in this State.
In resolving this question, the long and involved history of the defendants with DYFS must be noted, initially. This history extends over a period of approximately seventeen years, dating back to October, 1983.

FACTUAL BACKGROUND
Commencing in October, 1983, DYFS received numerous referrals concerning allegations of abuse and neglect involving children of M.A., then known also as M.S. On February 25, 1986, M.A. voluntarily agreed to place her three oldest children, who are not the subject of these proceedings, in foster care. Thereafter, on April 25, 1986, a complaint for custody was filed, and, subsequently, was amended to add a fourth child. On June 21, 1988, another trial judge rendered a decision finding the children were abused and neglected under the applicable statute, and that the parental rights of M.A. to the four children and the parental rights of R.A. to the fourth child should be terminated. An Order of Guardianship was entered on July 7, 1988.[1]
On June 13, 1989, the Appellate Division unanimously affirmed the trial court's decision, concluding that "[w]e agree with [the trial judge's] conclusion that `the evidence is overwhelming that the children's emotional health and best interests [s] would best be served by terminating the parental rights' of R.A. and M.S." New Jersey Division of Youth and Family Services v. M.S. and R.A., Nos. A-6156-87T3F and A-6256-87T3F (App. Div. June 13, 1989), *773 Page 2. A Petition for Certification was denied by the Supreme Court on May 4, 1990.
On March 4, 1994, a 171 count Complaint for Guardianship was filed as to a fifth child, both of whose biological parents are the present defendants. On November 3, 1994, still another trial judge rendered a written decision whereby the parental rights of the parents as to this child were terminated, concluding that "these defendants still do not possess a modicum of adequate parenting capability" and "[n]o plan for [re]unification is workable." In the Matter of the Guardianship of R.S.A., Docket Nos. FG-13-06-92 and FG-13-33-94B, Letter Memorandum dated November 3, 1994, Page 3. An Order for Guardianship was entered on November 18, 1994. On April 1, 1996, the Appellate Division unanimously affirmed the trial court's decision, stating "we find no justification for concluding, as the biological parents argue, that DYFS failed to use diligent efforts to assist them in remedying the circumstances that led to placement. In keeping with that holding, we are also satisfied the court had no alternatives to termination to consider. See N.J.S.A. 30:4C-15.1c." In the Matter of the Guardianship of R.S.A., No. A-2176-94T1 (App. Div. April 1, 1996), Page 10 [emphasis added].[2]
The present matter commenced with the filing of an Amended Verified Complaint under Docket Number FN-13-93-99A on November 10, 1998. Based upon various psychological reports and other information, DYFS filed the present Complaint for Guardianship on September 3, 1999 as to the present children, B.L.A. (age six) and T.A. (age four). Both children are in foster care. In its complaint, DYFS states:
31) The Division contends that under the Adoption and Safe Families Act, that no reasonable efforts are required of the Division to attempt reunification of the children with their biological parents based on prior Involuntary Termination of Parental Rights and prior convictions against R.A. of child endangerment.[3]

STATUTORY FRAMEWORK
In New Jersey Division of Youth and Family Services v. A.W., 103 N.J. 591, 512 A.2d 438 (1986), the Supreme Court set forth the factors that the trial court must consider in reaching a determination in a proceeding to terminate parental rights. These factors, effectively, were codified with the adoption of N.J.S.A. 30:4C-15.1 in 1991.
As originally adopted, N.J.S.A. 30:4C-15.1 (a)(3) required a finding that "[t]he division has made diligent efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home ..."
In March, 1999, the above statutory subsection was amended to require DYFS to assert only "reasonable" efforts to achieve family reunification.[4] This amendment *774 was in response to and implemented a provision of the federal "Adoption and Safe Families Act of 1997" (hereinafter referred to as "ASFA"), specifically 42 U.S.C.A. 671(A)(15), effective November 17, 1998.[5]
The adoption of ASFA had other impacts on existing New Jersey legislation. The "Comprehensive Child Abuse Prevention and Treatment Act" (hereinafter referred to as the "Act"), N.J.S.A. 9:6-8.83 through 9:6-8.106, was adopted, effective July 31, 1997, in compliance with the federal "Child Abuse Prevention and Treatment Act Amendments of 1996," 42 U.S.C.A. 5101 through 5116.
Specifically, N.J.S.A. 9:6-8.87 provided, in relevant part, as follows:
In any case in which the division accepts a child in care or custody, including placement, the division shall not be required to provide diligent efforts to reunify the child with a parent who has been found by a court of competent jurisdiction... to have committed, or attempted to commit, an assault that resulted in the significant bodily injury to the child or another child of the parent.
Following the enactment of ASFA, the above statutory provision was amended, again effective March 31, 1999, to provide that "the division shall not be required to provide reasonable efforts to reunify the child with a parent if an exception to the requirement to provide reasonable efforts has been established in accordance with section 25 of P.L.1999, c. 53 (C.30:4C-11.3)." [emphasis added]
N.J.S.A. 30:4C-11.3, also enacted and effective March 31, 1999, provides, in relevant part, as follows:
In any case in which the Division of Youth and Family Services accepts a child in care or custody, including placement, the division shall not be required to provide reasonable efforts to reunify the child with a parent if a court of competent jurisdiction has determined that:
a. The parent has subjected the child to aggravated circumstances of abuse, neglect, cruelty or abandonment.
b. The parent has been convicted of... committing or attempting to commit an assault that resulted, or could have resulted, in significant bodily injury to a child; or committing a similarly serious criminal act which resulted in the death of or significant bodily injury to a child.
c. The rights of the parent to another of the parent's children have been involuntarily terminated.
When determining whether reasonable efforts are required to reunify the child with the parent, the health and safety of the child and the child's need *775 for permanency shall be of paramount concern to the court.

[emphasis added]
Throughout P.L.1999, c. 53, of which the amendment of N.J.S.A. 9:6-8.87 and N.J.S.A. 30:4C-15.1 as discussed are just parts, there is the undisputable and clear expression of the overriding intent that "the safety of the child is of paramount concern." As the Court stated In the Matter of the Guardianship of K.H.O., 161 N.J. 337, 347, 736 A.2d 1246 (1999).
Parental rights, though fundamentally important, are not absolute. The constitutional protection surrounding family rights is tempered by the State's parens patriae responsibility to protect the welfare of children. [citation omitted]. The balance between parental rights and the State's interest in the welfare of children is achieved through the best interests of the child standard.
It is with this statutory framework that the court will address the central question presented in this matter.

RETROACTIVITY AND THE APPLICATION OF N.J.S.A. 9:6-8.87
Defendants' argument is not that the statute in question is being applied retroactive to the filing of the complaint in this matter, itself. They acknowledge the undisputable fact that the statute became effective before the complaint's filing date by many months.
Rather, the defendants contend that the reliance by DYFS on events which occurred prior to even the effective date of ASFA, i.e. November 17, 1998, is an attempt to improperly give retroactive effect to N.J.S.A. 9:6-8.87 and thereby justify the denial of reunification services leading up to the filing of the instant complaint.
A number of rules of construction must govern consideration of this issue of retroactivity. The courts of this State have long followed a general rule of statutory construction that favors a prospective application of statutes. Kopczynski v. County of Camden, 2 N.J. 419, 424, 66 A.2d 882 (1949); Phillips v. Curiale, 128 N.J. 608, 615, 608 A.2d 895 (1992).[6]
However, while a sound rule of statutory interpretation, this rule is not to be applied "mechanistically," in defeating a retroactive application of a statute, as was held in Gibbons v. Gibbons, 86 N.J. 515, 522, 432 A.2d 80 (1981):
.... This expression of legislative intent [for retroactivity] may be either express, that is stated in the language of the statute or in the pertinent legislative history [citation omitted], or implied, that is, retroactive application may be necessary to make the statute workable as to give it the most sensible interpretation [citations omitted].
See, also, Rothman v. Rothman, 65 N.J. 219, 223-24, 320 A.2d 496 (1974).
The Gibbons Court, nevertheless, went on to express a caveat to this retroactivity rule:
However, even if a statute may be subject to retroactive application, a final inquiry must be made. That is, will retroactive application result in "manifest injustice" to a party adversely affected by such an application of the statute? The essence of this inquiry is whether the affected party relied, to his or her prejudice, on the law that is now to be changed as a result of the retroactive application of the statute, and whether the consequences of the reliance are so deleterious and irrevocable that it would be unfair to apply the statute retroactively.

Gibbons v. Gibbons, supra, 86 N.J. at 523-24, 432 A.2d 80.[7]

*776 When the question of retroactivity arises in the context of the exercise of the police power to promote the public health, safety, morals or general welfare, we are closer to the issue presented in the instant matter. For example, zoning ordinance amendments are often given retroactive effect because the proper exercise of the police power outweighs private rights. Hohl v. Tp. of Readington, 37 N.J. 271, 279, 181 A.2d 150 (1962).
Likewise, it has been held that an equitable distribution statute may be applied retroactively to achieve fundamental fairness. Rothman, supra. Finally, in a situation closest to the present case, it has been held that under its parens patriae authority to protect those who cannot protect themselves because of "innate legal disability," e.g. minority, mental illness or incompetency, the State can retroactively apply civil commitment statutory amendments. In the Matter of D.C., 146 N.J. 31, 47-48, 679 A.2d 634 (1996).
Does it beg the question to suggest that the protection of children is, at least, as important as the achievement of proper zoning goals and effecting fair and equitable distribution, and may be equated with the protection of individuals suffering psychiatric problems, under the State's parens patriae authority? As stated earlier, parental rights, though fundamentally important, are not absolute; rather the constitutional protection surrounding family rights is tempered by the State's responsibility to protect the welfare of children. K.H.O., supra, 161 N.J. at 347, 736 A.2d 1246. So long as the public interest outweighs the private right, a statute can be applied retroactively and diminish or destroy that right. Upsetting a party's expectations is not the test. Harris v. Branin Transport, Inc., 312 N.J.Super. 38, 48, 711 A.2d 331 (App.Div.1998), certif. denied 156 N.J. 408, 719 A.2d 640.
Parental fitness is the key to determining the best interests of the child in parental rights termination cases. Adoption of Children by L.A.S., 134 N.J. 127, 139, 631 A.2d 928 (1993). Like consideration of parental fitness, evaluation of the efforts undertaken by DYFS to reunite a particular family must be done on an individual basis in a proceeding to terminate parental rights based upon the "best interests" of the child criterion. In the Matter of the Guardianship of DMH, 161 N.J. 365, 390, 736 A.2d 1261 (1999).
Several additional, general rules as to statutory construction are relevant to the resolution of the issue in this matter. A court's construction of a statute turns on the breath of the objectives of the legislation and the common sense of the situation. State v. Volpini, 291 N.J.Super. 401, 677 A.2d 780 (App.Div.1996).
In construing a statute, the primary task is to effectuate the legislative intent in light of the language used and objective sought to be achieved. Matter of Adoption of N.J.A.C. 7:1I, 149 N.J. 119, 693 A.2d 97 (1997). Where it is claimed that the statute does not specifically address the issue, the court's role is not only to discern the Legislature's intent not only from its terms, but from its structure, history and purpose. Fiore v. Consolidated Freightways, 140 N.J. 452, 659 A.2d 436 (1995).
Statutes should be interpreted in a manner that will effectuate the legislative intent in light of the language used and objects sought to be achieved. State v. Smith, 279 N.J.Super. 131, 652 A.2d 241 (App.Div.1995). Where it is apparent that the drafters of a statute did not contemplate a specific situation, a court must interpret the statute consonant with the probable intent of the draftsman, had he anticipated the situation at hand. County of Essex v. Waldman, 244 N.J.Super. 647, *777 583 A.2d 384 (App.Div. 1990), certif. denied 126 N.J. 332, 598 A.2d 890 (1991).
In interpreting a statute, the duty of the court is to ascertain the intent of the Legislature and to determine what a sensible legislator would wish that a court should do. Johns-Manville Products Corp. v. Dronebarger, 211 N.J.Super. 520, 511 A.2d 1304 (Law Div.1986). In statutory interpretation, it is assumed that the Legislature sought to achieve a reasonable goal. Sperling v. Teplitsky, 294 N.J.Super. 312, 683 A.2d 244 (Ch.Div.1996). Courts have a duty to give a statute its most sensible interpretation. D.C. v. F.R., 286 N.J.Super. 589, 670 A.2d 51 (App.Div.1996). Finally, a statute may be applied retroactively when there exists compelling reasons requiring retroactivity. Ohlhoff v. Ohlhoff, 246 N.J.Super. 1, 586 A.2d 839 (App.Div.1991).
The specific issue raised in this matter has been addressed by a number of other jurisdictions. When a statute is drafted on a pattern of another jurisdiction, it is appropriate to consider interpretations in that jurisdiction. State v. Chew, 150 N.J. 30, 695 A.2d 1301 (1999).
The Court of Appeals in In re Joshua M., 66 Cal.App.4th 458, 78 Cal.Rptr.2d 110 (1998) held that a denial of reunification services to a father under a statute which permitted such a denial when the parent was previously unsuccessful in unifying with the minor's sibling, or half sibling, or unsuccessful in treatment of a long-standing substance abuse problem did not constitute an unfair retroactive application of a newly created statute, even though the circumstances that activated the statute occurred before its effective date. As the court stated:
It is well settled that [a] statute does not operate retroactively merely because some of the facts or conditions upon which its application depends came into existence before the enactment [citation omitted]
The statute's reliance upon antecedent events or conduct is analogous to recidivism provisions in the Penal Code, such as the "Three Strikes" law and other habitual offender laws, that enhance punishment because the defendant has committed other crimes in the past.

[Id. at 469, 78 Cal.Rptr.2d 110.]
In the Matter of the Custody and Guardianship of Marino S., Jr., 693 N.Y.S.2d 822, 181 Misc.2d 264 (Fam.Ct.1998), the court held that the state enactment of ASFA applied to all children in foster care as of the effective date of the statute (including those for whom a petition for termination of parental rights was pending) and that diligent or reasonable efforts at reunification need not precede termination of parental rights, based upon severe or repeated abuse, even if not directed to the child who is the subject of the proceedings. As the court stated:
Federal ASFA has two primary purposes: first to mandate that children's health and safety must always be paramount concerns of the child welfare system, and second to expedite permanency planning [footnote omitted]. The first goal is an attempt to redress perceived excesses in the application of the "reasonable efforts" requirement of [federal statute].
. . . . .
Respondents challenge the "retroactive" application of the new legislation to the pending proceedings ...
. . . . .
New statutes are presumptively prospective. [citation omitted]. If a new statute is remedial in nature, however, it may be applied retroactively unless such application would impair vested rights. [citation omitted]. In determining whether a statute should be applied retroactively, the first step is to look at the language of the statute itself. Federal ASFA by its express terms is applicable *778 to all children in foster care on the date of its enactment ...[8]
. . . . .
Review of the legislative goal is central to the retroactivity analysis [citation omitted]. Statutes affecting the welfare of children and furthering important public policies are generally given retroactive effect [citations omitted]. The overriding mandate of federal ASFA is to clarify that in making "reasonable efforts" to reunify children with their birth families, "the child's health and safety shall be the paramount concern." [citation omitted] ... The new statute neither creates new rights nor abrogates pre-existing ones, vested or otherwise... NY-ASFA is designed to "modify and expand remedies already available," and, therefore, may properly be applied even to proceedings filed before the passage of the new legislation. [citation omitted].

[Id. at 828-29] [emphasis added]

See, also, In the Matter of Keith M., 697 N.Y.S.2d 823, 181 Misc.2d 1012 (Fam.Ct., 1999) (statute which is remedial in nature may be applied retroactively in the absence of an impact on vested rights)
Finally, as to a related issue, in In re Sheneal W., Jr., 45 Conn.Supp. 586, 728 A.2d 544 (1999), the court held that even if a statute allowing termination of parental rights when parent has intentionally assaulted another child of the parent, resulting in serious bodily injury, is applied prospectively, it would still have applied to a termination petition that was brought after the statute's effective date, but which relied on events that occurred before the effective date. "A statute is not rendered retroactive merely because the facts upon which its subsequent action depends are drawn from a time antecedent to its effective date." Id. at 550, citing 2 J. Sutherland, Statutory Construction (5th Ed. Singer 1992) § 41.01, p. 338.
In the present matter, it is clear that throughout the evolution of statutes in this State concerning the protection of children, that parental rights, though fundamentally important, are not recognized as absolute. Such rights are tempered, if not balanced, by the State's paramount interest, as parens patriae, to protect the "best interests" of children and protect their health and safety.
ASFA, as implemented by N.J.S.A. 9:6-8.87, clarified the overriding priority to always protect children. The guardianship complaint in this matter was filed after the effective date of the State's response to ASFA. Beyond the clear mandate of ASFA, it would be unreasonable to conclude that the Legislature did not wish to protect all children at risk. Moreover, the use of events that occurred prior to the statutory enactment to support its enforcement is not a retroactive application of the statute, particularly in terms of protecting all children at risk.
Furthermore, DYFS would still be required to prove by "clear and convincing" evidence all other required elements of N.J.S.A. 30:4C-15-1 to terminate the parental rights. A.W., supra, 103 N.J. at 612, 512 A.2d 438. "Appellant's position that [the ability to forego "reasonable efforts" at reunification] creates an irrebuttable presumption of inability to parent based on prior court orders and dramatically increases the risk of erroneous deprivation of parental rights is unfounded. Rather, it is the person's current parenting skills, examined in light of a heightened standard of proof, which determine whether the child will be adjudged dependent." In re Baby Boy H., 63 Cal.App.4th 470, 477-78, 73 Cal.Rptr.2d 793 (1998).
Ultimately, defendants' argument would not only unduly limit the remedial benefit the statute in question implicitly seeks, but would require the court to ignore the history of the family relationship whose consideration is clearly the intent of the statute. Nothing in reason supports that the *779 Legislature in enacting N.J.S.A. 9:6-8.87 intended to protect some of our most vulnerable children, while leaving others at risk, coming to terms with the reality that reunification efforts are truly doomed as to some children, while ignoring that same reality for other children similarly situated.
In the final analysis, the futility of reunification efforts must be measured by the family track record and not an artificial date which ignores that reality. It would be absured to ignore the very conduct that for the legislative knowledge and mind required the very statute be enacted to address that conduct. There is no "manifest injustice" to the defendants, since they possess no "vested rights" that are immune from concerns as to the "best interests" of children.

CONCLUSION
The court has concluded that N.J.S.A. 9:6-8.87 is applicable to the present situation, notwithstanding the fact that its application, in this case draws on events preceding its enactment.
The final issue is whether DYFS has met the requirements to now invoke this statutory provision. Clearly it has. Pursuant to N.J.S.A. 30:4C-11.3, the public record is self-evident that the exceptions under this statutory provision have been met.
Earlier trial courts, affirmed on the appellate level, found, among other things, that defendant R.A. had sexually abused the five-year old daughter of defendant M.A., who, repeatedly, has rejected services and failed to disassociate herself from the co-defendant. The defendants' relationship, which includes a history of physical abuse, substance abuse and domestic violence, has continued to the present. As the Appellate Division stated in its opinion dated April 1, 1996:
Despite the sexual and physical abuse and the loss of her three children by her prior marriage and her daughter from her relationship with R.A. through parental termination proceedings in 1988, M.S. pursued her relationship with R.A. She visited him in prison and provided him with a home when he was paroled. The reinstitution of their led to the birth of R.S.A. [as to whom the defendants' parental rights were subsequently terminated]
. . . . .
... The potential harm and endangerment for R.S.A. are essentially that R.A. has an undisputed propensity for abuse of children due to his paranoid, anti-social personality. He lacks insight to control that personality. M.S. [A.] has neither the capacity to understand the need for, nor the capacity to make decisions in the best interests of her son, especially when those interests may be threatened by R.A.'s conduct.
[In the Matter of the Guardianship of R.S.A. No. A-2176-94T1 (App. Div. April 1, 1996), Pages 4 and 7.]
Furthermore, defendant R.A. has been criminally convicted for endangering a child's welfare by his rape of the five-year old daughter of defendant M.A. and by chasing the co-defendant with her seven-month old child into a street, where, the child being struck by a moving vehicle, suffered a fracture of her leg.
Finally, it is undisputed that the parental rights of these defendants involving five children have been terminated previously, decisions which were sustained on appeal. Defendants, as a result, do not and cannot dispute that DYFS had clearly and convincingly met its burden under N.J.S.A. 9:6-8.87.
Therefore, based upon the foregoing, the court has concluded that DYFS did not need to exercise reasonable efforts for reunification pursuant to the applicable statute.
NOTES
[1] The judge found, in his bench decision, among other things, that (a) three of the children had been severely abused (one by defendant R.A.), (b) the children were often absent from school, "filthy, hungry and inadequately dressed," (c) the defendants were drug users "while the children were in their care and custody," (d) the defendants were "unwilling or unable to eliminate the harm to the children," (e) M.A. had been offered and refused a variety of services, (f) M.A. "evidenced every intention of resuming her relationship with a man who, admittedly, abused the daughter," (g) the defendants "have thwarted the efforts at family reunification by their conduct and past histories," and (h) based upon the entire record, "the termination of parental rights [would] do more good than harm." As a result, the court finally concluded that "the children are abused and neglected children under the statute," and that "it's in the best interest of all four children that the parental rights be terminated." [Division of Youth and Family Services v. R.A./M.S., Docket No. FN-13-34-86N, Transcript dated June 21, 1988]
[2] It should be noted that the earlier children subsequently have been adopted.
[3] On July 29, 1986, R.A. pled guilty to endangering the welfare of a child and was sentenced on August 29, 1986 to an indeterminate term at the Yardville Youth Correctional Institution Complex. (DYFS Exhibit 1). On November 19, 1987, R.A. pled guilty, again, to endangering the welfare of a child and was sentenced on December 23, 1987 to a probationary term of five years, concurrently with serving five days in the Monmouth County Correctional Institution. The sentencing judge found that the defendant had "both a juvenile record and prior adult criminal record." (DYFS Exhibit 2). Prior to August 29, 1986, the defendant had "at least five prior convictions and three violations of probation" for charges unrelated to the child endangerment conviction(s). (DYFS Exhibit 1).
[4] Interestingly, N.J.S.A. 30:4C-15.1(c), as originally adopted, defined, in relevant part, "diligent efforts" as "reasonable attempts by an agency authorized by the division to assist the parents in remedying the circumstances and conditions that led to the placement of the child and in reinforcing the family structure." The 1999 amendment, defined "reasonable efforts" as under the pre-existing definition.
[5] The legislative history of the federal enactment contains the following statement:

[T]here seems to be a growing belief that Federal statutes, the social work profession, and the courts sometimes err on the side of protecting the rights of parents. As a result, too many children are subjected to long spells of foster care or are returned to families that reabuse them.
The bipartisan group that wrote this legislation recognized the importance and essential fairness of the reasonable efforts criterion. What is needed is not a wholesale reversal of reasonable efforts or of the view that government has a responsibility to help troubled families solve the problems that lead to child abuse or neglect... Rather than abandoning the Federal policy of helping troubled families, what is needed is a measured response to allow States to adjust their statutes and practices so that in some circumstances States will be able to move more efficiently toward terminating parental rights and placing children for adoption.
Thus, the Committee bill would require States to define "aggravated circumstances," such as ... chronic abuse, or sexual abuse, in which States are allowed to bypass the Federal reasonable efforts criteria and instead would be required to make efforts to place the child for adoption. In addition, States would be required to bypass reasonable efforts to provide services to families if the parent ... has another child for whom parental rights were involuntarily terminated.
[House Report No. 105-77, April 28, 1997, Cong. Record Vol. 143 (1997), "Purpose and Scope," Page 8] [emphasis added]
[6] This is to be contrasted with the apparent federal rule. See, for example, Bradley v. School Board of Richmond, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d. 476 (1974).
[7] This last control on the application of retroactivity has also been expressed as whether retroactive application would unconstitutionally interfere with "vested rights," i.e. "a fixed entitlement to protection from state action." Twiss v. State, 124 N.J. 461, 467, 470, 591 A.2d 913 (1991).
[8] See, for example, Section 103 of ASFA.